854 So.2d 515 (2002)
J.R. SESSIONS et al.
v.
Collier H. ESPY, Jr., and Espy & Metcalf, P.C.
1010329.
Supreme Court of Alabama.
October 4, 2002.
Order Overruling Rehearing February 14, 2003.
*516 William B. Jackson II, Mobile, for appellants.
Wade H. Baxley of Ramsey, Baxley & McDougle, Dothan, for appellees.
STUART, Justice.
J.R. Sessions and Emily Sessions, husband and wife, and their corporation, Sessions Feeds, Inc., appeal from a summary judgment entered in favor of the defendants Collier H. Espy, Jr., and Espy & Metcalf, P.C. (hereinafter sometimes collectively referred to as "Espy"), on the Sessionses and the corporation's legal-malpractice claims. We affirm in part, reverse in part, and remand.

Background
From July 1992 until January 1994, J.R. Sessions and Emily Sessions negotiated with Manuel Patrick to purchase from Patrick the assets of an existing business known as Patrick's Feeds, Inc. Neither the Sessionses nor Patrick was represented by legal counsel during those negotiations. The Sessionses obtained certain financial information from Patrick; the Sessionses then submitted this financial information to one or more accountants for review.
After an attorney drew up the necessary paperwork, the purchase was consummated on January 12, 1994. As a part of the agreement, J.R. Sessions and Emily Sessions were required to sign promissory notes in their individual capacities. During the negotiations, the Sessionses were forming a corporation, known as Sessions Feeds, Inc.; this corporation was formally incorporated on February 11, 1994, after the Sessionses had already acquired the assets of Patrick's Feeds, Inc.
During its very first year, Sessions Feeds, Inc., did not perform as well as the Sessionses had expected. The Sessionses claim that they discovered gross exaggerations in the sales figures provided to them by Manuel Patrick; the Sessionses claim that, relying upon those exaggerated figures, the accountants had erroneously concluded that the business would be a profitable one for the Sessionses at the agreedupon *517 purchase price. The Sessionses claimed that they had been fraudulently induced to purchase the assets of Patrick's Feeds, Inc., as a result of Patrick's misrepresentations.
The Sessionses assert that they retained Collier Espy in early April 1995 to represent them individually in a fraudulent-inducement action against Manuel Patrick and Patrick's Feeds, Inc. The Sessionses claim that Espy began conducting settlement negotiations with Patrick. The record, in fact, documents that on April 12, 1995, Espy corresponded with Manuel Patrick, stating in a letter, "Please be informed I have been retained by Mr. J.R. Sessions, as President of Sessions Feeds, Inc., to represent this corporation, and if necessary Mr. and Mrs. Sessions, individually, with regard to recently discovered inaccurate information on the financial and/or income statements provided by you." The Sessionses claim that by late 1995 or early 1996, they had paid Espy $6,185 in fees, based on an hourly rate of $125.
The Sessionses also claim that in late 1995, Sessions Feeds, Inc., retained Espy to file a petition in bankruptcy pursuant to Chapter 11 but that the bankruptcy action "occurred solely incidental to a foreclosure in December 1995, which arose in part because the Sessions[es], followed the advice of Collier Espy, beginning in April of 1995, to `[abate] remittance of [any more] payments under the subject notes' that had been executed, along with the fraudulent agreement, to purchase Patrick's Feeds, Inc., on January 12, 1994."
Espy, however, disputes certain of those claims. He asserts that he never represented the Sessionses in their individual capacities but that he was retained by the Sessionses only in their representative capacities as shareholders and officers of Sessions Feeds, Inc. Espy claims that he was retained for the purpose of filing a Chapter 11 bankruptcy petition for Sessions Feeds, Inc. This Chapter 11 petition was later converted to a proceeding under Chapter 7. Espy also claims that he told the Sessionses, both before and after the Chapter 11 petition was converted to a Chapter 7 petition, that any action that might exist against Patrick and Patrick's Feeds, Inc., or against any other individual or entity "would become an asset of the Chapter 7 Trustee for administration and ultimate resolution."
The Sessionses deny that they were ever told that their claim against Manuel Patrick and Patrick's Feeds, Inc., would become an asset of the estate or that it would be controlled by the bankruptcy trustee. They allege that they believed at all times Espy was their lawyer and that he was pursuing their claims against Manuel Patrick and Patrick's Feeds, Inc., on their behalf.
Apparently, the grounds for the individual and the corporate malpractice claims against Espy differ. The Sessionses allege that Espy committed malpractice against the Sessionses in their individual capacities as a result of his failure to assert a fraudulent-inducement claim against Manuel Patrick and Patrick's Feeds, Inc., before the expiration of the statute of limitations on that claim and his failure to advise the Sessionses as to the legal impact of certain acts and omissions by Espy. The malpractice claims asserted by the corporation are based upon the claim that Espy acted both as attorney for the debtor (i.e., the corporation) and as attorney for the bankruptcy trustee without advising the corporation of this conflict of interest; that Espy failed to fully investigate the claims of the corporation against Manuel Patrick and Patrick's Feeds, Inc.; and that Espy failed to honor certain representations that he made to *518 the debtor and to the debtor's subsequent legal counsel.

The Record
The following is a time line of the events as documented in the record:
April 12, 1995Letter from Espy to Manuel Patrick, in which Espy states, "Please be informed I have been retained by Mr. J.R. Sessions, as President of Sessions Feeds, Inc., to represent this corporation, and if necessary Mr. and Mrs. Sessions, individually, with regard to recently discovered inaccurate information on the financial and/or income statements provided by you...."
April 19, 1995Letter from Espy to J.R. Sessions regarding Patrick's possible defenses to the Sessionses' claims; Espy's second request for a retainer for his services.
August 15, 1995Letter from Espy to Patrick's attorney regarding settlement negotiations that occurred during months of April and May 1995.
December 8, 1995Letter from attorney Joe C. Cassady to J.R. Sessions regarding notice of the Sessionses' default under the note and mortgage executed on January 12, 1994.
January 1, 1996Sessions Feeds, Inc., files a petition in bankruptcy under Chapter 11.
(Undated document)Sessions Feeds, Inc., files with the bankruptcy court an application to employ Espy as legal counsel; J.R. Sessions, as president of Sessions Feeds, Inc., represents in this document that Espy was "not connected in any way with the creditors or any parties-in-interest."
January 17, 1996Letter from Espy to Cassady notifying Patrick and Patrick's Feeds, Inc., that an adversary proceeding against Patrick and Patrick's Feeds, Inc., would be filed as part of Sessions Feeds, Inc.'s Chapter 11 proceeding.
January 22, 1996Order entered by bankruptcy court authorizing Sessions Feeds, Inc., as debtor-in-possession, to employ Espy as its legal counsel; the order states that "the Court [is] satisfied that C.H. Espy, Jr., represents no interest adverse to said Sessions Feeds, Inc., as Debtor-in-Possession, herein, or to its Estate."
January 26, 1996Letter from Espy to Cassady notifying Patrick and Patrick's Feeds, Inc., that, because of adverse sales conditions, Sessions Feeds, Inc., will be closing doors for business and will be converting its Chapter 11 bankruptcy proceeding to a Chapter 7 proceeding.
April 19, 1996Sessions Feeds, Inc., sues Manuel Patrick and Patrick's Feeds, Inc.
April 19, 1996Letter from Espy to manager of Purina Mills, in which Espy states, "Based upon my representation of Sessions Feeds, Inc. in a pending bankruptcy proceeding and thus my associated representation of Mr. and Mrs. J.R. Sessions."
May 1, 1996Motion to convert Sessions Feeds, Inc.'s Chapter 11 proceeding to a Chapter 7 proceeding.
September 3, 1996Bankruptcy trustee seeks to have Espy appointed as counsel for the trustee in the adversary proceeding filed on behalf of Sessions Feeds, Inc.
September 10, 1996Bankruptcy court approves trustee's request to hire Espy as legal counsel for Chapter 7 bankruptcy trustee.
April 16, 1997Letter from Espy to Von G. Memory (new legal counsel for Manual Patrick and Patrick's Feeds, Inc.) regarding settlement of adversary proceeding against Manuel Patrick and *519 Patrick's Feeds, Inc.; Espy indicates that because of costs and attendant risks of litigation settlement might be possible; however, Espy indicates that J.R. Sessions is not inclined to agree to any settlement but that the bankruptcy trustee, not Mr. Sessions, has settlement authority over the adversary proceeding.
May 20, 1997Letter from Espy to Von Memory, in which Espy states, "Since it appears I will need to take Mr. Patrick's deposition along with Christa Boesen; and I assume you will want to take Mr. J.R. Sessions' deposition, please provide me with dates...."
September 15, 1997Letter from Espy to the Sessionses notifying them of his recommendation to the bankruptcy trustee of proposed settlement of adversary proceeding and reasons for his recommendation and notifying the Sessionses that a copy of a proposed settlement would be forthcoming.
September 22, 1997Stipulation of settlement of the adversary proceeding submitted to the bankruptcy court; objection to proposed settlement filed by the Sessionses' new attorney, Michael Gamble.
November 3, 1997Hearing before the bankruptcy court regarding stipulation of settlement of adversary proceeding; Espy, as attorney for trustee, recommends that the settlement not go forward because the Sessionses have new legal counsel who will handle the adversary proceeding on a contingency basis and, if there is a recovery, will benefit debtor's estate as well as Sessionses; the bankruptcy trustee agrees to follow Espy's recommendation but the bankruptcy court approves the proposed settlement despite Espy's recommendation; even though the bankruptcy judge questions why no one appeared on behalf of the Sessionses, Espy does not explain to the bankruptcy judge that he told the Sessionses and Gamble that neither the Sessionses nor Gamble needed to appear at the hearing.
November 13, 1997Order of the bankruptcy court approving stipulation of settlement over objections of the attorney for J.R. Sessions.
November 24, 1997Amended order of the bankruptcy court approving stipulation of settlement over objections of the attorney for J.R. Sessions.
December 12, 1997Letter from Espy addressed to "To Whom It May Concern" summarizing his representation of Sessions Feeds, Inc., in the bankruptcy proceeding; Espy states that he began his representation of Sessions Feeds, Inc., in January 1996.
April 7, 1998Letter from attorney David G. Poston to J.R. Sessions regarding Poston's belief that, after reviewing the transcript of the hearing before the bankruptcy court, the Sessionses would not be successful on an appeal from the bankruptcy court's order approving the settlement.
July 14, 1998Letter from attorney Michael J. Gamble to J.R. Sessions regarding summary of attempts to represent the Sessionses and Sessions Feeds, Inc.; states that no individual cause of action against Manual Patrick and Patrick's Feeds, Inc., was possible because the statute of limitations had already run; states that at the time Gamble was retained, the corporation was already a debtor in bankruptcy and was involved in an adversary proceeding that the bankruptcy trustee proposed to settle; states that Espy agreed to recommend to the bankruptcy court and to the bankruptcy trustee that Gamble be allowed to represent the Sessionses in the adversary proceeding and that Espy agreed to recommend that the proposed settlement *520 be withdrawn; states that Espy represented that neither Gamble nor the Sessionses needed to attend the bankruptcy court hearing on the proposed settlement; states that despite Espy's assurances, the bankruptcy court approved the proposed settlement; Gamble also states that, after reviewing a transcript of the hearing, it appears that "Espy did not speak out to the court regarding our opinion of the plan, our confidence in securing a favorable outcome through litigation efforts and our expectation of handling the litigation on a contingency fee arrangement."
September 13, 1999Complaint by J.R. Sessions, Emily Sessions, and Sessions Feeds, Inc., filed against Espy and Espy & Metcalf, P.C.
August 2, 2001Affidavit of Espy filed with trial court; Espy attests that his representation of Sessions Feeds, Inc., began in the fall of 1995.
August 24, 2001Letter from attorney William B. Jackson to the bankruptcy trustee Kenneth Jones, requesting that, if the Sessionses' claims of legal malpractice against Espy are considered to be an asset of the Chapter 7 bankruptcy estate, the trustee officially abandon those claims so that the Sessionses may pursue them.
September 17, 2001Affidavit of attorney William M. Doyle, as an expert witness for the Sessionses, attesting that Espy failed to use that degree of care, skill, and diligence commonly possessed and exercised by attorneys in the local and national community in the following ways:
(1) by not filing an action on behalf of the Sessionses individually;
(2) by allowing the statute of limitations to expire on the Sessionses' individual causes of action;
(3) by not advising the Sessionses that the statute of limitations had expired;
(4) by recommending that the bankruptcy trustee settle the adversary proceeding in a manner that was not in the best interests of the Sessionses individually and/or Sessions Feeds, Inc., without advising the Sessionses that there was an actual conflict of interest in his serving as counsel for the trustee and as counsel for the Sessionses;
(5) by not conducting sufficient discovery to have a proper basis on which to analyze the proposed settlement;
(6) by failing to advocate withdrawal of the settlement plan and a continuance of the hearing on the proposed settlement as he represented to the Sessionses and Gamble he would do;
(7) by not offering at the hearing the evidence necessary to establish the substance of the fraudulent misrepresentations and to establish the substantial compensatory damages suffered as a result;
(8) by failing to advise the court at the hearing on the proposed settlement that he also represented the Sessionses, whose interests were in actual conflict with those of the trustee;
(9) by advising the bankruptcy judge that the Sessionses and Gamble had been advised that the court intended to dispose of the matter at the hearing on the proposed settlement;
(10) by failing to advise the bankruptcy judge that he (Espy) had informed the Sessionses and Gamble that they would not need to be present at the hearing.
September 26, 2001Notation entered on the case action summary that a motion *521 for a summary judgment filed by Espy and Espy & Metcalf, P.C., is granted; trial judge indicated no findings of fact and no conclusions of law.
October 18, 2001Motion to reconsider filed by J.R. Sessions, Emily Sessions, and Sessions Feeds, Inc., or, alternatively, request for trial court to set out material facts it deems undisputed and the legal basis for its ruling.
October 23, 2001Notation entered on the case action summary that motion to reconsider is denied.
October 31, 2001The Sessionses and Sessions Feeds, Inc., file their notice of appeal to the Alabama Supreme Court.

Issues on Appeal
The Sessionses and Sessions Feeds, Inc., make the following arguments on appeal:
I. The trial court erred in entering a summary judgment for Espy and Espy & Metcalf, P.C., where the Sessionses produced substantial evidence of a legal-malpractice action under the Alabama Legal Services Act, Alabama Code 1975 § 6-5-570 et seq.
II. The trial court erred in entering a summary judgment for Espy and Espy & Metcalf, P.C., on the ground that the legal-malpractice claim of the corporation, Sessions Feeds, Inc., was the property, or an asset, of its Chapter 7 bankruptcy estate.[1]
Standard of Review
"We review the trial court's entry of a summary judgment de novo, and our standard of review is well settled.
"`In reviewing the disposition of a motion for summary judgment, "we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact," and whether the movant was "entitled to a judgment as a matter of law." Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.'"
Hollingsworth v. Rainbow City, 826 So.2d 787, 789 (Ala.2001), quoting Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997) (citations omitted).
Discussion
I. Whether the Sessionses produced substantial evidence of legal malpractice as required under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Alabama Code 1975.
*522 On September 13, 1999, J.R. Sessions, Emily Sessions, and Sessions Feeds, Inc., filed a five-count complaint against Espy and his law firm, Espy & Metcalf, P.C. The complaint alleged (1) a breach of a legal duty (this count presumably brought under the common law); (2) a breach of a legal duty (this count brought under the Alabama Legal Services Liability Act ("ALSLA"), § 6-5-570 et seq., Ala. Code 1975); (3) misrepresentation; (4) suppression; and (5) negligence. Each claim was alleged to have arisen out of an attorney-client relationship between the Sessionses and Sessions Feeds, Inc., on the one hand, and Espy and Espy & Metcalf, P.C., on the other.
However, based on the allegations of the complaint, the Sessionses and Sessions Feeds, Inc., are entitled to assert only a claim under the ALSLA. The ALSLA provides:
"There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."
§ 6-5-573, Ala.Code 1975. The term "legal service provider" is defined to mean:
"Anyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and the members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations, associations, and partnerships...."
§ 6-5-572(2), Ala.Code 1975. The term "legal service liability action" is defined as:
"Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."
§ 6-5-572(1), Ala.Code 1975.
From these Code sections, it is clear that the ALSLA applies to all actions against "legal service providers" alleging a breach of their duties in providing legal services. The duty required under the ALSLA may be one undertaken by contract or gratuitously. Cunningham v. Langston, Frazer, Sweet & Freese, 727 So.2d 800 (Ala.1999); Peterson v. Anderson, 719 So.2d 216 (Ala.1998). Thus, we review the trial court's summary-judgment order under the standards applicable to a legal service liability action.
The trial court's order entering a summary judgment for Espy and Espy & Metcalf, P.C., contained no findings of fact and no conclusions of law. Therefore, we do not know the exact basis for the trial court's ruling in favor of Espy. However, Espy argued before the trial court that no attorney-client relationship existed between him and the Sessionses in their individual capacities and that the bankruptcy trustee controlled the malpractice claim of the debtor corporation, Sessions Feeds, Inc. On appeal, the Sessionses and *523 Sessions Feeds, Inc., challenge these arguments.
Espy argues that he represented only Sessions Feeds, Inc., in connection with its bankruptcy action; Espy argues that no attorney-client relationship existed between him and the Sessionses in their individual capacities. If Espy is correct that he did not undertake to represent the Sessionses in their individual capacities, he owed them no duty and he therefore cannot be liable for breaching that duty.
However, the evidence contained in the record[2] is in conflict as to whether an attorney-client relationship existed between Espy and Espy & Metcalf, P.C., on the one hand, and J.R. Sessions and Emily Sessions, in their individual capacities, on the other. Both sides filed affidavits with the trial court. Espy, in his affidavit, denies ever representing the Sessionses in their individual capacities. However, the Sessionses state in their affidavit:
"... Collier H. Espy, Jr., and Espy & Metcalf, P.C., were retained, in very early April, 1995, to represent us in connection with a civil case of fraud in the inducement which we had against Manuel Patrick, Patrick's Feeds, Inc., et al.
"....
"... Our first meeting with Mr. Espy about our civil case of fraud was on April 5, 1995, which is the date that he was retained and undertook our legal representation.
"From the outset, Collier Espy affirmatively led us to believe that he was representing all of the Plaintiffs herein, Sessions Feeds, Inc., as well as J.R. and Emily Sue Sessions, individually. At no time did the Defendant, Collier H. Espy, Jr., ever advise either of us that he was not representing us in our individual capacities."
Additionally, some of the correspondence exchanged between Espy and the Sessionses and between Espy and third parties raises a question whether Espy represented the Sessionses in their individual capacities or whether Espy represented the Sessionses merely by association in their capacities as shareholders of Sessions Feeds, Inc.[3]
Additionally, the affidavits contain conflicting statements as to the date Espy began his representation in the underlying matter. In their affidavit, the Sessionses allege that they retained Espy in April 1995 to represent them in their individual capacities. However, in his affidavit, Espy asserted that he did not undertake his representation of Sessions Feeds, Inc., until the fall of 1995. If Espy's assertion is truethat he did not represent Sessions Feeds, Inc., until the fall of 1995 and that he never represented J.R. Sessions and Emily Sessions in their individual capacitiesthen whom did Espy represent in April 1995, when he was corresponding with Manuel Patrick?
As evidence indicating that Espy further breached the duty he owed them as their lawyer, the Sessionses further point to the fact that Espy failed to file an action on their behalf before the statute of limitations expired on their claims. They also claim that Espy then failed to advise them that the statute of limitations on that claim had expired. However, Espy asserts that he did not file an action on their behalf and he did not advise them that the statute of limitations had expired on their individual *524 claims against Manuel Patrick and Patrick's Feeds, Inc., because he did not represent the Sessionses in their individual capacities.
Again, the evidence before this Court is in dispute. The only parties who have access to the truth have presented two versions of this story; for that reason, we conclude that a question of material fact is presented. The trial court improperly entered a summary judgment in favor of Espy and Espy & Metcalf, P.C.
II. Whether the legal-malpractice claim of Sessions Feeds, Inc., was the property of, or an asset of, the bankruptcy estate, and, thus, could not be maintained without the permission or participation of the bankruptcy trustee.
Although the trial court did not identify its specific reasons for granting Espy & Metcalf, P.C., and Espy's summary-judgment motion, one of the arguments presented in favor of the motion was that the corporation's malpractice claim was an asset of the bankruptcy debtor and, therefore, the claim could not be brought without the permission or participation of the bankruptcy trustee. Sessions Feeds, Inc., disputes this claim and asserts that the trial court improperly granted Espy & Metcalf, P.C., and Espy's motion as to the corporation's claim.
Although not specifically identified in the complaint, the bases for the corporation's malpractice claim are apparently identified in the September 17, 2001, affidavit of William Doyle, an attorney who testified as an expert witness for the Sessionses. Doyle testified that Espy failed to use that degree of care, skill, and diligence commonly possessed and exercised by attorneys in the local and national community. Doyle based his conclusion on the following factors:
(1) Espy failed to file a complaint on behalf of the Sessionses individually;
(2) Espy allowed the statute of limitations to expire on the Sessionses' individual causes of action;
(3) Espy did not advise the Sessionses that the statute of limitations had expired on their individual claims;
(4) Espy recommended that the bankruptcy trustee settle the adversary proceeding in a manner that was not in the best interests of the Sessionses individually and/or Sessions Feeds, Inc., without advising the Sessionses that there was an actual conflict of interest between his loyalties as counsel for the trustee and as counsel for them;
(5) Espy did not conduct sufficient discovery to have a proper basis with which to analyze the proposed settlement;
(6) Espy failed to advocate withdrawal of the settlement plan and a continuance of the hearing on the proposed settlement as he represented to J.R. Sessions and attorney Gamble he would do;
(7) Espy did not offer at the hearing the evidence necessary to establish the substance of the fraudulent misrepresentations and to establish the substantial compensatory damages suffered as a result;
(8) Espy failed to advise the court at the hearing on the proposed settlement that he also represented the Sessionses, whose interests were in actual conflict with those of the trustee;
(9) Espy advised the bankruptcy judge that the Sessionses and Gamble had been advised that the court intended to dispose of the matter at the hearing on the proposed settlement;
(10) Espy failed to advise the bankruptcy judge that he had informed the Sessionses and Gamble that they would not need to be present at the hearing.
*525 Claims (1) through (3) above relate only to the Sessionses in their individual capacities. Claims (4) through (10), however, purport to state malpractice claims related to Espy's representation of either the corporation alone or of the corporation and the Sessionses individually. Thus, we must determine whether claims (4) through (10) are assets of the debtor's estate and therefore require the trustee's permission or participation to go forward.
In In re Alvarez, 224 F.3d 1273 (11th Cir.2000), the United States Court of Appeals for the Eleventh Circuit addressed this identical issuewhether a bankruptcy debtor's state-court legal-malpractice claim against his bankruptcy counsel was viable without the bankruptcy trustee's participation. The Eleventh Circuit concluded that under both Florida malpractice law and federal bankruptcy law, the debtor could not pursue his malpractice claim without the participation of the trustee.
The Alvarez court noted that under Florida law, a cause of action for legal malpractice consisted of three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence, which proximately caused a loss to the client. 224 F.3d at 1276. The Alvarez court found that all three elements existed or came into existence at the moment the debtor's bankruptcy petition was filed. Further, the Alvarez court noted that a bankruptcy estate was immediately created upon the filing of the petition and that a bankruptcy debtor loses control of the assets and property of his or her estate at the moment the bankruptcy petition is filed. Because the malpractice claim in Alvarez existed when the bankruptcy petition was filed, the Eleventh Circuit held that the claim was included in the "property of the estate." Thus, the Eleventh Circuit concluded that the bankruptcy trustee controlled the malpractice claim.
The Alvarez court went on to analyze this issue under federal bankruptcy law and reached the same conclusion. The Eleventh Circuit looked to the United States Supreme Court case of Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), in which the Court considered whether the debtors' claim for loss-carryback tax refunds were the property of the debtors' bankruptcy estates or the property of the individual debtors. The Segal Court concluded that the losscarryback refund claim was "sufficiently rooted in the pre-bankruptcy past ... that [they] should be regarded as `property' under § 70a(5) [of the Bankruptcy Act]." 382 U.S. at 380, 86 S.Ct. 511.
The Alvarez court stated:
"Applying the rationale of Segal to the instant case, we conclude that Alvarez's legal malpractice cause of action is also sufficiently rooted in his pre-bankruptcy past that it should be considered property of Alvarez as of the commencement of his bankruptcy case, and thus property of his estate. Alvarez established an attorney-client relationship with [the law firm] prior to his filing for bankruptcy, and this cause of action arises directly out of Alvarez's interactions with the firm prior to filingi.e. Alvarez's instructions to [the law firm] to file Chapter 11 and the firm's alleged disregard of those instructionsi.e. the preparation and filing instead of a Chapter 7 petition. Simultaneous with the filing, Alvarez suffered significant harm from the firm's alleged negligence, i.e. the loss of control of assets. The claim in the instant case is even more firmly `rooted in the pre-bankruptcy past' than the claim in Segal. See also [In re] Tomaiolo, 205 B.R. [10] at 15 [Bankr. D. Mass.1997] (concluding that debtor's legal *526 malpractice claims, including claim concerning services in the preparation of documents filed with the bankruptcy petition, were sufficiently rooted in the pre-bankruptcy past to be includible in bankruptcy estate)."
Alvarez, 224 F.3d at 1279. For these reasons, the Alvarez court concluded:
"The bankruptcy trustee is the legal representative of the bankruptcy estate, with capacity to sue and be sued. See 11 U.S.C. § 323. Thus, as we have concluded that the legal malpractice cause of action at issue is property of Alvarez's bankruptcy estate, and as there is no indication in the record before us that the trustee has abandoned this claim, Alvarez may not maintain this suit without participation by the trustee."
224 F.3d at 1279-80.
Applying Alabama legal-malpractice law and federal bankruptcy law to the facts of this case as established in the record, we conclude that the legal-malpractice claim asserted by Sessions Feeds, Inc., against Espy is properly considered the "property" of the debtor's estate. First, the corporation's malpractice claim is primarily premised upon a claim that Espy failed to conduct discovery and to investigate thoroughly the merits of the corporation's claim against Manuel Patrick and Patrick's Feeds, Inc., before recommending the settlement of the adversary proceeding. However, whether we view this alleged failure as occurring before the filing of the Chapter 7 petition, and thus being included in the property of the bankruptcy estate, or after the filing of the Chapter 7 petition, and, therefore, being under the control of the bankruptcy trustee, Sessions Feeds, Inc., lost control of the adversary proceeding on May 1, 1996at the moment its Chapter 7 bankruptcy estate was created. Thus, any malpractice claim Sessions Feeds, Inc., had against Espy and Espy & Metcalf, P.C., arising out of an alleged failure to conduct discovery or to fully investigate was transferred to the control of the bankruptcy trustee when the Chapter 7 petition was filed.
Moreover, the transcript of the hearing before the bankruptcy court regarding the proposed settlement reveals that Espy did not recommend the proposed settlement to the bankruptcy court; he expressly withdrew his recommendation of the proposed settlement. At the November 3, 1997, hearing before the bankruptcy court, Espy informed the bankruptcy judge that Michael Gamble was now representing Sessions Feeds, Inc., on a contingency basis, that Espy believed it was in the best interest of Sessions Feeds, Inc., and the bankruptcy estate to allow the adversary proceeding to go forward and that he no longer supported the proposed settlement of that adversary proceeding. However, the bankruptcy judge did not accept Espy's recommendation. Thus, the record reveals absolutely no evidence to support a malpractice claim against Espy and Espy & Metcalf, P.C., based upon Espy's alleged recommendation of the proposed settlement.
Additionally, in the application by the trustee for authority to employ an attorney to represent the trustee in the adversary proceeding, the bankruptcy court was made aware of Espy's prior representation of Sessions Feeds, Inc., in connection with the filing of the Chapter 11 bankruptcy petition and the filing of the adversary proceeding. In that same motion, the trustee represented to the bankruptcy court that Espy represented no interest "adverse to the Trustee or the Estate in the matters upon which he is to be engaged for your Applicant. Therefore, it is respectfully suggested this employment should be in the best interests of *527 the Estate." The bankruptcy court approved this request; we must assume that it determined no conflict of interest existed. Moreover, if J.R. Sessions, Emily Sessions, or Sessions Feeds, Inc., wished to object to Espy's representation of the bankruptcy trustee, they should have done so on the date Espy was appointed to represent the trustee.
Finally, we conclude that, as was the case in Segal and Alvarez, the corporation's malpractice claims are sufficiently rooted in its prebankruptcy relationship with Espy so that those claims should be considered to have been the property of the debtor's estate at the time it filed its bankruptcy petition. Sessions Feeds, Inc., established an attorney-client relationship with Espy prior to filing for bankruptcy, and we conclude that the malpractice allegations in this case (failure to conduct discovery and to investigate the merits of claims against Manuel Patrick and Patrick's Feeds, Inc., and the failure to remain loyal to Sessions Feeds, Inc.) are sufficiently related to those interactions to be considered an asset or property of the bankruptcy estate as of the filing of the bankruptcy petitions.
Thus, the bankruptcy trustee is a necessary party to the malpractice claims alleged by Sessions Feeds, Inc., against Espy and Espy & Metcalf, P.C. Because the trustee has not abandoned those claims and is a not a participant in this action, the trial court properly entered a summary judgment in favor of Espy and Espy & Metcalf, P.C., as to the claims of Sessions Feeds, Inc., against them.

Conclusion
We conclude that the malpractice claims of Sessions Feeds, Inc., are controlled by the bankruptcy trustee, and that the trustee has not indicated an intent to abandon those claims. We affirm that part of the trial court's summary judgment in favor of Espy and Espy & Metcalf, P.C., as to the corporation's malpractice claims. As to the Sessionses' individual claims of legal malpractice, we find sufficient evidence of genuine issues of material fact to withstand a motion for summary judgment. We reverse that portion of the trial court's summary judgment in favor of Espy and Espy & Metcalf, P.C., on the Sessionses' individual malpractice claims. We remand the case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, SEE, LYONS, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in part and concurs in the result in part.
MOORE, C.J., and BROWN, J., concur in part and dissent in part.
JOHNSTONE, Justice (concurring in part and concurring in the result in part).
I concur in the main opinion insofar as it reverses the summary judgment entered against the individual Sessions plaintiffs. I concur in the result of the main opinion in affirming the summary judgment entered against Sessions Feeds, Inc.
I respectfully disagree with that part of the rationale for the affirmance to the effect that Espy's withdrawing his support of the settlement of the adversary proceeding in the bankruptcy court absolved him of any liability for his already having recommended the settlement to the bankruptcy trustee, having entered the settlement stipulation, and having submitted it to the bankruptcy court. (See the September 15, 1997, and September 22, 1997, items in the chronology in the main opinion, and see items (4), (5), and (7) of the Doyle affidavit quoted in the main opinion.) The record supports the inference *528 that, by the time Espy withdrew his support of the settlement, the bankruptcy court already had the bit in its teeth. I agree with the main opinion, however, in its reasoning that Sessions Feeds, Inc., was powerless to pursue the malpractice claim against the defendants without the participation of the Chapter 7 bankruptcy trustee or the permission of the bankruptcy court.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur with the majority's decision to affirm the trial court's summary judgment for Collier H. Espy and Espy & Metcalf, P.C., insofar as it relates to the malpractice claims alleged by Session Feeds, Inc. I respectfully dissent from the majority's decision to reverse the summary judgment insofar as it relates to the malpractice claims asserted by J.R. Sessions and Emily Sessions in their individual capacities.
BROWN, Justice (concurring in part and dissenting in part).
I concur with the majority's decision to affirm the summary judgment in favor of Collier H. Espy, Jr. ("Espy"), and Espy & Metcalf, P.C., on the legal-malpractice claims asserted by Sessions Feeds, Inc. However, I respectfully dissent from the portion of the majority's opinion that reverses the summary judgment in favor of Espy and Espy & Metcalf, P.C., on J.R. and Emily Sessions's individual malpractice claims.
On September 10, 1996, the bankruptcy court approved the bankruptcy trustee's application to employ Espy as attorney for the trustee. 11 U.S.C. § 327(a) and (e) allow a bankruptcy trustee to employ an attorney who has represented the debtor only "if such attorney does not represent... any interest adverse to the debtor or to the estate" (emphasis added).
By approving the appointment of Espy to represent the bankruptcy trustee, the bankruptcy court necessarily determined that Espy did not represent the Sessionses, who, as equity holders of the debtor corporation and as personal guarantors of notes executed for the acquisition of Patrick's Feeds, Inc., obviously possessed interests that were inherently adverse to the estate.

On Application for Rehearing
STUART, Justice.
APPLICATION OVERRULED.
MOORE, C.J., and HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
In its opinion released on October 4, 2002, this Court affirmed the summary judgment entered in favor of Collier H. Espy, Jr., on legal-malpractice claims brought by former client Sessions Feeds, Inc., on the ground that the bankruptcy trustee of Sessions Feeds was a necessary party to any such claim. Sessions Feeds asserted legal-malpractice claims against Espy based on Espy's acting as the attorney both for the bankruptcy trustee and for Sessions Feeds in recommending that Sessions Feeds settle a claim it had asserted against third parties ("the adversary proceeding") without conducting sufficient discovery and without advising Sessions Feeds of the existence of the conflict of interest.
The adversary proceeding was filed on April 19, 1996, after the Chapter 11 bankruptcy proceeding had been instituted, and 34 days later, on May 23, 1996, the bankruptcy proceeding was converted to a Chapter 7 proceeding. On September 15, *529 1997, Espy notified the Sessionses that he had recommended to the bankruptcy trustee that the adversary proceeding should be settled. A theoretical basis exists for the conclusion that the alleged wrongful conduct of Espy with regard to recommending a settlement when there has been inadequate discovery predated as well as followed the conversion of the bankruptcy proceeding from Chapter 11 to Chapter 7. Consequently, this Court's reliance in its October 4, 2002, opinion on In re Alvarez, 224 F.3d 1273 (11th Cir.2000), was not misplaced.
Espy subsequently withdrew his support for the settlement, but the bankruptcy court enforced the settlement anyway. Our October 4, 2002, opinion absolved Espy of responsibility because he withdrew his support for the settlement. On further reflection, I am persuaded that Justice Johnstone was correct in disagreeing with that portion of our opinion holding that Espy's withdrawal of support for the settlement absolved him of any liability. If I were today voting for the first time, I would concur in the result as to that portion of the opinion, and my vote would be concurring in part and concurring in the result in part.
On application for rehearing, Sessions Feeds, citing "due process of law," urges us for the first time to stay the proceedings in the legal-malpractice action so as to allow it to either obtain leave of the bankruptcy court to proceed or to obtain formal abandonment of the claim by the bankruptcy trustee. While the harshness of the result reached upon resolution of arcane questions of bankruptcy law is troublesome, especially in view of the fact that the principal case relied upon in our October 4, 2002, opinionIn re Alvarezwas not decided until almost a year after the commencement of the legal-malpractice action here, I am not persuaded that we should grant a stay. Whether any relief from this judgment in favor of Espy is appropriate pursuant to Rule 60, Ala. R. Civ. P., based upon subsequent proceedings in the bankruptcy court should be a matter for further proceedings in the trial court.
NOTES
[1] The Sessionses also asserted on appeal that the trial court erred in entering a summary judgment for Espy and Espy & Metcalf, P.C., on the ground that the Sessionses' legal-malpractice claim was barred by the applicable statute of limitations. However, we do not know the basis for the trial court's summary judgment; Espy did not assert the statute of limitations as an affirmative defense and Espy did not argue the statute of limitations before the trial court in his motion for a summary judgment. For these reasons, and because of our disposition of this case, we pretermit any discussion of this issue.
[2] The record does not contain a retainer agreement or a contract of employment between Espy and the Sessionses.
[3] For example, in a letter dated April 12, 1995, Espy stated: "I have been retained to represent this corporation, and if necessary Mr. and Mrs. Sessions, individually."