938 So.2d 413 (2005)
James R. BRYANT and Beth Bryant
v.
Betty Jean ROBLEDO and Guadalupe Robledo.
2030589.
Court of Civil Appeals of Alabama.
June 30, 2005.
Certiorari Denied March 10, 2006.
*415 Raymond C. Bryan, Anniston, for appellants.
Shaun L. Quinlan, Anniston, for appellees.
Certiorari Denied March 10, 2006 Alabama Supreme Court 1041584.
PITTMAN, Judge.
James R. Bryant and his wife, Beth Bryant, appeal from a summary judgment entered in favor of Betty Jean Robledo and her husband, Guadalupe Robledo, in the Robledos' action to recover $15,000 plus interest.
On June 11, 2002, the Robledos filed a complaint in the Calhoun Circuit Court alleging that the Bryants had fraudulently obtained $15,000 from them on June 13, 2000, or, in the alternative, that the Bryants had breached a contract to perform legal services for the Robledos.
In July 2002, the Bryants filed a motion to dismiss. In that motion, they asserted that at all times pertinent to the pending action there existed no contract between the Robledos and the Bryants. The Bryants instead contended that Betty Jean Robledo's father, Marshall Nave, had been a client of James Bryant for several years and asserted that the Robledos did not have standing to sue on behalf of Nave. The Robledos responded to the motion to dismiss by filing copies of correspondence that, they said, supported their contention that James Bryant had agreed to provide legal services for them. Because the parties submitted materials outside the pleadings in support of the dismissal motion, the trial court's ruling was in the nature of a ruling on a summary judgment motion. See Rule 12(b), Ala. R. Civ. P., and Phillips v. AmSouth Bank, 833 So.2d 29, 31 (Ala.2002). In addition, the Robledos filed a motion requesting that all costs and fees of the action be paid by the Bryants, pursuant to § 12-19-270, Ala.Code 1975.
*416 The trial court denied the Bryants' motion to dismiss on September 10, 2002. The next day, the Robledos filed an amended complaint that added a conversion claim against the Bryants.[1]
On October 4, 2002, attorney Raymond C. Bryan filed a notice of appearance on behalf of the Bryants. Twice, in early September and in early October 2002, the Robledos' attorney prepared requests for admissions and purportedly served those requests upon counsel for the Bryants.[2] On November 13, 2002, the Robledos filed a request for a default judgment based upon the failure of the Bryants to file an answer to the complaint as amended or to file answers to the requests for admissions. The trial court set the motion for a hearing on November 27, 2002. The day before the hearing, the Bryants' attorney filed a consolidated answer to the complaint and the amended complaint in which the Bryants again generally denied that James Bryant had entered into a contract with the Robledos and again asserted that the Robledos did not have standing to sue for legal services that had been rendered for James Bryant's alleged client, Nave. Additionally, the Bryants' answer noted that Beth Bryant had filed objections to the requests for admissions on September 5, 2002. We note, however, that the record on appeal does not indicate that any such objections were filed.[3]
On December 3, 2002, the trial court entered an order stating that because the Bryants had not responded in a timely manner to the Robledos' requests for admissions, the matters set forth in the admission requests would be deemed admitted. The Robledos filed a motion requesting a summary judgment on December 6, 2002; eleven days later, the Bryants filed a response to the Robledos' motion together with a cross-motion for a summary judgment in which the Bryants again asserted that no contract for legal services had existed between the Bryants and the Robledos and that the Robledos lacked standing to sue on behalf of Nave. Additionally, the Bryants filed affidavits and items of correspondence between the parties that, they said, conclusively established that the $15,000 in dispute was actually a loan from the Robledos to Nave to defray his legal fees during the time pertinent to their action. Moreover, the Bryants asserted that the Robledos had asked James Bryant to represent Nave in a conservatorship proceeding filed in Tennessee and that the Robledos had agreed to send $15,000 on behalf of Nave; based on those alleged facts, the Bryants contended that the Robledos' assertion of fraud was totally unfounded. In an affidavit accompanying the Bryants' summary-judgment motion, Beth Bryant stated that although she had worked for a time as a bookkeeper in her husband's law firm, she was not a lawyer and had only had brief social contacts with the Robledos.
*417 The trial court granted the Robledos' summary-judgment motion in part and entered a partial judgment on September 18, 2003. In that judgment, the trial court ordered the Bryants to pay the Robledos $15,000 plus interest in the amount of $7,950.64 on the basis of fraud and breach of contract; the conversion claim was held over for a subsequent jury trial. On January 6, 2004, the Robledos filed a motion to dismiss the remaining count of conversion and requested that the trial court enter a Rule 54(b), Ala. R. Civ. P., order to establish the finality of the September 2003 judgment. Instead, the trial court entered an order on February 9, 2004, dismissing the case because "there are no remaining issues."
On appeal, the Bryants assert that the trial court abused its discretion in entering a judgment in favor of the Robledos because, they say, (1) the Robledos did not have standing to sue the Bryants; (2) the requests for admissions were outside the scope of Rule 36, Ala. R. Civ. P.; (3) the Robledos' summary-judgment motion was not supported by any affidavits or other legal evidence; and (4) the Bryants were entitled to a summary judgment in their favor because they proved that the Robledos could not recover under any legal theory.
Before turning to the consideration of the general legal arguments raised by the Bryants, we feel it is appropriate to address the Robledos' claims against Beth Bryant separately. The admissions directed to Beth Bryant, regardless of whether they were correctly deemed admitted or not, all center on fraud and breach-of-contract issues. Those admissions may be summarized as follows: Beth Bryant worked as a bookkeeper or office manager for the law firm in which James Bryant was a partner, and she regularly had occasion to write checks on the law firm's various accounts to pay monthly bills, salaries, and other expenses. During the time pertinent to the Robledos' action, Beth Bryant wrote several checks to pay law-firm bills from the account containing the Robledos' $15,000; at least $11,000 of that amount was paid to James Bryant, and that amount was eventually deposited into his personal checking, saving, or investment accounts; at least one of those accounts was also held in her name as his wife.
While those admissions might support a claim of conversion, they do not support either of the two claims upon which the partial summary judgment in favor of the Robledos was based: breach of contract or fraud. None of those admissions established the fact that Beth Bryant promised to provide legal services or entered into any negotiation or contract with the Robledos regarding her provision of legal services. In addition, none of those admissions indicates actions by Beth Bryant that constitute misrepresentation or fraudulent inducement that could form the basis of a viable fraud claim. At most, the requests for admissions relating to Beth Bryant may have tended to prove elements of the tort of conversion, but nothing more. Although the Robledos did assert such a claim, they voluntarily withdrew their conversion claim against the Bryants after the trial court granted their motion for a partial summary judgment on the breach-of-contract and fraud claims. Because no evidence was adduced indicating that Beth Bryant either entered into and breached a contract with the Robledos or obtained their money by fraud, the trial court erred in entering the summary judgment as to Beth Bryant's liability. To that extent, we reverse the summary judgment and instruct the trial court to enter a judgment in favor of Beth Bryant as to those claims.
*418 Initially, the Bryants contend that the Robledos did not have standing to sue alleging breach of contract and fraud in failing to perform legal services promised in exchange for the Robledos' payment of $15,000.[4] In Sessions v. Espy, 854 So.2d 515 (Ala.2002), our Supreme Court interpreted the Alabama Legal Services Liability Act ("the ALSLA"), § 6-5-570, et seq., Ala.Code 1975, to apply to all actions against legal-service providers that allege a breach of their duties in providing legal services; both common-law and statutory claims such as breach of a duty, negligence, misrepresentation, and the like are all subsumed into a single cause of action under the ALSLA. Sessions, 854 So.2d at 522. The allegations of fraud and breach of contract relating to services provided on behalf of Nave that are stated in the complaint fall within the purview of the ALSLA. An essential element of a claim under the ALSLA is the existence of an attorney-client relationship. Brackin v. Trimmier Law Firm, 897 So.2d 207, 229 (Ala.2004). To create an attorney-client relationship, there must be an employment contract "`either express or implied'" between an attorney and "`the party for whom he purports to act or some one authorized to represent such party.'" Board of Commissioners of the Alabama State Bar v. Jones, 291 Ala. 371, 377, 281 So.2d 267, 273 (1973) (quoting 5 Am.Jur. Attorneys at Law § 29 (1936)).
The Robledos have not argued that they were third-party beneficiaries of a contract between Nave and James Bryant; rather, they have insisted that the electronic correspondence between themselves and Bryant constituted all of the elements of an offer, an acceptance, and the mutual assent to a contract for legal services. Moreover, the Robledos contend that the $15,000 they sent to Bryant was consideration for their contract with Bryant for legal services. The core problem with the Robledos' assertion is that none of the admissions established or tended to establish the existence of a contract between Bryant and the Robledos. At best, the admissions tend to establish a legal-services contract between Bryant and Nave, with the Robledos only acting as an agent for Nave in making that contract and as a funding source for Nave.
Specifically, James Bryant admitted that he agreed to invoke the power of attorney signed by Nave in order to create a new corporation to handle Nave's assets and to hire an auditor to verify Nave's assets and debts; after verifying those financial figures, James Bryant expected to hire independent third-party administrators to monitor and administer Nave's real-estate interests, investments, and savings and trust accounts. Additionally, James Bryant admitted that he agreed to serve as co-counsel to defend Nave in a conservatorship proceeding challenging Nave's mental competency that had been filed in the state of Tennessee.
Because the admissions do not support the Robledos' assertions of the existence of an express or implied contract directly between them and James Bryant, we conclude that the Robledos did not show standing to pursue a breach-of-contract claim alleging a failure to provide legal services to Nave. See Sessions and Brackin, supra; see also Robinson v. Benton, 842 So.2d 631, 636-37 (Ala.2002) (discussing Alabama law and declining to change the rule of law that bars an action for legal malpractice against a lawyer by a plaintiff for whom the lawyer has not undertaken a duty, either by contract or gratuitously).
*419 However, the mere fact that James Bryant has not admitted that he had a direct contract with the Robledos does not demonstrate that the Bryants' motion to dismiss was due to be granted in its entirety. Even if no direct contract between James Bryant and the Robledos existed, the Robledos also argued that James Bryant knew at the time that he requested payment of the $15,000 by the Robledos that Nave was incompetent and could not contract for legal representation. If the Robledos could produce evidence to support that contention, then a claim of fraudulent inducement would be shown and would preclude dismissal of the Robledos' claim of fraud. See, e.g., Kinney v. Williams, 886 So.2d 753 (Ala.2003) (nonclients had standing to sue attorney alleging fraud and misrepresentation, even though they did not have a contractual relationship with the attorney). To that extent, then, the trial court did not err in denying the Bryants' motion to dismiss on the basis that the Robledos lacked standing to assert their fraud claim and, subsequently, in granting the Robledos' motion for a summary judgment.[5]
The Bryants next assert that the trial court erred in ordering that, due to the Bryants' failure to properly or to timely respond to the Robledos' requests for admissions, those matters would be deemed admitted. See Rule 36(b), Ala. R. Civ. P. The Bryants rely primarily on the decision of Cole v. Cooley, 547 So.2d 1187 (Ala.Civ. App.1989), which was ostensibly predicated upon our Supreme Court's holding in Irons v. Le Sueur, 487 So.2d 1352 (Ala.1986).
The underlying facts in Irons were quite unusual. In that case, the party propounding the admissions sought a negative answer but, instead, due probably to a typographical error, elicited an admission from the party's opponent that negated the entire theory of the party's action. Our Supreme Court held that the trial court was not required to view that admission as conclusively establishing a fact; instead, the Supreme court ruled that the trial court's factual determinations, including one that had directly contradicted the admission and had been made following a review of all the evidence submitted, could be deemed correct based on the ore tenus standard. Irons, 487 So.2d at 1355. In making that decision, our Supreme Court noted that "[t]he purpose of Rule 36 is to expedite the trial and to relieve the parties of the cost of proving facts which will not be disputed and the truth of which can be ascertained by reasonable inquiry." Id. In addition, our Supreme Court noted:
"[The response to a specific request for an admission] was simply evidence to be considered by the trial court. Where a case is tried ore tenus, as here, the trial court's findings are presumed correct and its judgment . . . will be reversed only if, after consideration of all the evidence and all reasonable inferences to be drawn therefrom, the judgment . . . is found to be plainly and palpably wrong."
Id.
This court purported to apply that rule in Cole v. Cooley, supra, where the trial court considered other evidence in reaching a conclusion that was inconsistent with a number of the matters that were subject to being deemed admitted based upon the prevailing party's failure to respond to certain admission requests. Cole, 547 So.2d at 1188. Cole concluded by flatly stating that "[a] Rule 36 request for admissions may not be used by a party to conclusively *420 establish a fact which is obviously in dispute." Id.
On the other hand, the Robledos respond that they are entitled to a judgment in their favor by application of Rule 36(b), Ala. R. Civ. P., and on the authority of Thomson v. Bank, 506 So.2d 1012 (Ala.Civ. App.1987), which relied upon this court's previous decision in Steadham v. United States Leasing Corp., 382 So.2d 563 (Ala. Civ.App.1980). In Thomson, we followed Evans v. Insurance Co. of North America, 349 So.2d 1099 (Ala.1977), in holding that the trial court had not abused its discretion in entering a judgment for a plaintiff based primarily on the admissions that had been deemed admitted. In Steadham, this court followed Evans and stated that a summary judgment or a directed verdict could be entered against a party that had failed to respond to requests for admissions; in both Steadham and Thomson, either no response or inadequate responses had been filed in an untimely manner. Thus, the dispositive legal issue that is presented is whether the rule stated in Cole is sound.
Under our law, failure to respond to a request for admissions in Alabama can have significant consequences. Pursuant to Rule 36(b), Ala. R. Civ. P., a matter is deemed admitted unless a written answer or objection is served within the applicable time frame; the duty to respond is not fulfilled by having previously responded to the complaint with a denial of every material allegation. See Breen v. Baldwin County Fed. Sav. Bank, 567 So.2d 1329 (Ala.1990). Thus, a total failure to respond to a request for admissions usually results in the matters specified in the request being deemed admitted. See Rule 36.1, Ala. R. Civ. P. In Crum v. SouthTrust Bank of Alabama, 598 So.2d 867 (Ala.1992), the appellant contended that an adverse summary judgment was improper because the bank had not demonstrated the absence of any genuine issues of material fact under Rule 56, Ala. R. Civ. P. Our Supreme Court determined that because the appellant had failed to respond to the bank's requests for admissions and because the record contained substantial evidence of the facts and contained no evidence to the contrary, the bank was entitled to a summary judgment based primarily on the admissions. Crum, 598 So.2d at 871.
According to a long line of cases from our Supreme Court, any relief to be afforded from the consequences of tardy responses lies within the trial court's discretion. See, e.g., Bradley v. Demos, 599 So.2d 1148 (Ala.1992); Green Tree Acceptance, Inc. v. Doan, 529 So.2d 201 (Ala. 1988); and Hatton v. Chem-Haulers, Inc., 393 So.2d 950 (Ala.1981). After extensive research into the issue, we have been unable to locate a reported decision that has reversed a trial court's judgment where late responses to admission requests were allowed or where unrefuted admissions were conclusively deemed as facts for purposes of trial or for purposes of deciding a summary-judgment motion or other dispositive motion. In fact, the Cole decision, a case that Justice Lyons has characterized in his treatise as "questionable" (1 Champ Lyons, Jr., & Ally Windsor Howell, Jr., Alabama Rules of Civil Procedure Annotated 844 (4th ed.2004)), is the only reported Alabama case wherein a trial court allowed an affidavit or other evidentiary submission to defeat a summary-judgment motion that had been filed and was based on admissions that had previously been deemed admitted by the trial court.
Based on the above-cited legal principles, we conclude that the trial court did not abuse its discretion in basing its summary judgment as to James Bryant on the admissions deemed admitted in December *421 2002. To the extent that Cole stands for the proposition that admissions can never be used by a party to establish the absence of a fact issue, that case is overruled as inconsistent with Rule 36(b), Thomson, and Steadham.
Additionally, the Bryants assert that because the Robledos' failed to respond to the Bryants' summary-judgment motion with affidavits and other evidence, the trial court was required to accept their version of the facts. That contention fails to acknowledge that the Robledos had previously filed voluminous correspondence, court documents, and other evidence in opposition to the Bryants' motion to dismiss and in support of their own summary-judgment motion. The Bryants' reliance on the cases of Motors Insurance Co. v. Southern Bell Telephone Co., 431 So.2d 1308 (Ala.Civ.App.1983), and Sellers v. Doctors Medical Center, 402 So.2d 1021 (Ala.Civ.App.1981), is misplaced. Those cases stand for the proposition that a party may not rest on mere allegations in opposing a motion for a summary judgment. Obviously, the Robledos had already filed numerous documents in support of their claims, documents that were "on file" at the time of the summary judgment (see Rule 56(c)(3), Ala. R. Civ. P.), and the trial court properly entered a summary judgment against James Bryant based on that evidence.
The Bryants also assert that they were entitled to a summary judgment because they proved that the Robledos could not recover under any legal theory. Our standard of review with respect to the grant or denial of a summary-judgment motion is well-settled:
"A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R. Civ. P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n, 671 So.2d 674, 675 (Ala.Civ.App. 1995). The Bryants contended from the time the Robledos initiated the action that no contract for legal services had been entered into between the parties. For the first time, in their response in opposition to the Robledos' summary-judgment motion, the Bryants addressed the fraud claim and contended that the only possible fraud was promissory fraud, which requires an intent to deceive. The admissions, however, pertain directly to that issue and conclusively established the fact that James Bryant knew or should have known that he would be unable to perform any legal or financial services because Nave had been deemed incompetent before he signed James Bryant's power of attorney.
The Bryants correctly note that four elements must be proven in a fraud action: (1) false representation, (2) as to a material fact, (3) reliance on that representation, and (4) damage resulting from the reliance. Crowne Invs., Inc. v. Bryant, 638 So.2d 873, 876-77 (Ala.1994). The Robledos contended that James Bryant knew or should have known that he would be unable to perform the legal and financial services that he promised to perform; they asserted that if they had been told that Nave was incompetent at the time he *422 gave Bryant a power of attorney, they would never have sent Bryant the $15,000. In addition to the admissions, the Robledos presented to the trial court a number of electronic letters that, they said, prove that James Bryant made false representations as to his legal services and that they lost $15,000 as a result of relying on his statements. The Bryants attempted in the trial court to explain the statements or to characterize them as only potentially "promissory fraud," but they offered no substantial evidence to rebut the Robledos' contention.
Regardless of the whether the Robledos' breach-of-contract claim was viable, we conclude that the Robledos presented substantial evidence that they relied on a misrepresentation of James Bryant to their financial detriment in the amount of $15,000 so as to defeat the Bryants' summary-judgment motion as it pertained to claims asserted against James Bryant. Therefore, although the trial court erred in entering a summary judgment against Beth Bryant, we conclude that the trial court properly entered the summary judgment against James Bryant and in favor of the Robledos on their fraud claim in this case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., concurs.
THOMPSON, J., concurs in the result, without writing.
MURDOCK, J., concurs in the result, with writing.
BRYAN, J., concurs in the result in part and dissents in part, with writing.
MURDOCK, Judge, concurring in the result.
Section 6-5-572(1), Ala.Code 1975, defines a legal-services-liability action as one based, in whole or in part, on a violation by a legal-service provider of the standard of care applicable to a legal-service provider. It then goes on to state:
"A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."
As both the main opinion and Judge Bryan's special writing point out, if there is to be a claim under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975, there must be an attorney-client relationship. That this is a correct statement of law, however, does not foreclose the possibility of a contract in which "party A" contracts with "party B," an attorney, to provide legal services to "party C." "Party C" would simply be the third-party beneficiary of the contract entered into directly between "party A" and the attorney.[6]
*423 The fact that under such an arrangement there would be an attorney-client relationship between the attorney and "party C," would not change the fact that "party A" may have an action in contract against the attorney if the attorney breaches his promise to "party A" to provide legal services to "party C." Likewise, the fact that there would be an attorney-client relationship between the attorney and "party C" would not prevent "party A" from bringing an action in tort against the attorney in the event the attorney fraudulently induced "party A" to enter into the above-described contract or to pay the attorney a sum of money thereunder.
Unless the trial court abused its discretion in not permitting Bryant to withdraw or amend the admissions that resulted from his not responding timely to the Robledos' request for admissions (which Bryant has not argued), Bryant's admissions are conclusively binding on him. Rule 36(b), Ala. R. Civ. P., specifically says that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Among the matters therefore "conclusively established" in the present case are facts that establish the Robledos' fraud claim against Bryant. It is for this reason that I concur in the result reached by the main opinion.
BRYAN, Judge, concurring in the result in part and dissenting in part.
Insofar as the main opinion reverses the summary judgment in favor of the plaintiffs, I concur in the result. Insofar as the main opinion affirms the summary judgment in favor of the plaintiffs on their fraud claim, I must respectfully dissent. In my opinion, the absence of evidence of an attorney-client relationship between the plaintiffs and the defendant James Bryant was fatal to the plaintiffs' fraud claim as pleaded by the plaintiffs. See § 6-5-573, Ala.Code 1975; Sessions v. Espy, 854 So.2d 515, 522 (Ala.2002) (recognizing that claims that are alleged to have arisen out of an attorney-client relationship are all subsumed under the Alabama Legal Service Liability Act ("the ALSLA," § 6-5-570 et seq., Ala.Code 1975)); and Brackin v. Trimmier Law Firm, 897 So.2d 207, 229 (Ala.2004) (holding that "[a]n attorney-client relationship is an essential element of a claim under the [ALSLA]. . . . ").
Although the plaintiffs argued in support of their motion for a summary judgment that James Bryant fraudulently induced them to agree to pay for legal services for Mr. Nave, they had not pleaded such a claim. Given the requirement of Rule 9(b), Ala. R. Civ. P., that circumstances constituting the alleged fraud must be pleaded with particularity, the trial court erred in entering a summary judgment in favor of the plaintiffs on an unpleaded fraud claim. See Rector v. Better Houses, Inc., 820 So.2d 75, 78-79 (Ala.2001) (holding that trial court erred in entering a summary judgment in favor of defendant on the basis of an unpleaded affirmative defense even though the plaintiff had not objected to the assertion of the unpleaded affirmative defense in the trial court).
NOTES
[1] The Robledos' amended complaint also alleged common-law claims of fraud and breach of contract.
[2] Although the case-action-summary sheet contains the entry "10/2/02 Notice of service of discovery material2nd request for admissions to plaintiffs," the record does not contain direct indication of receipt of the admission requests by the Bryants. No signed delivery receipts are contained in the record; only a photocopy of the post-office receipt showing purchase of certified-mail postage for the September requests is included in the record.
[3] The case-action-summary sheet contained in the record on appeal only notes that an "answer to request for admissions" was filed with the trial court on September 5, 2002; the record does not identify the answering party or parties, nor the content of those answers.
[4] We note that the Bryants' motion to dismiss was filed and denied before the Robledos amended their complaint to include a claim of conversion against the Bryants.
[5] As noted previously, the Robledos' complaint never specified what action on the part of Beth Bryant could constitute the basis for a fraud claim; we have already concluded that Beth Bryant was entitled to a judgment as a matter of law on the claims against her.
[6] The main opinion notes that the Robledos have not argued that they were third-party beneficiaries of a contract between Nave and James Bryant. The opinion also cites Robinson v. Benton, 842 So.2d 631, 636-37 (Ala. 2002), a case which discusses the general rule that Alabama law does not allow an action for legal malpractice against a lawyer by someone claiming to be a third-party beneficiary of the attorney-client relationship between that lawyer and another person. As the main opinion also implicitly recognizes, however, the claims asserted by the Robledos in this case would appear to be dependent upon their direct interaction with Bryant (which, among other things, the Robledos at one point contend led to a contract directly between them and Bryant to which Nave was a third-party beneficiary), not the Robledos' assertion of a status as third-party beneficiaries of a contract between Bryant and Nave.