In re:  Fernando R. ALVAREZ, Debtor.

Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Plaintiff-Appellee,

v.

Fernando R. Alvarez, Defendant-Appellant.

No. 99-12918.

United States Court of Appeals,

Eleventh Circuit.

Aug. 30, 2000.

Appeal from the United States District Court for the Middle District of Florida. (No. 98-02261-CIV-T-23B), Steven D. Merryday, Judge.

Before ANDERSON, Chief Judge, and DUBINA and HILL, Circuit Judges.

ANDERSON, Chief Judge:

Fernando Alvarez appeals from the district court's order reversing an order of the bankruptcy court. His appeal raises the question of whether his legal malpractice cause of action, relating to the filing of his petition for bankruptcy, is property belonging to him as an individual or is property of his bankruptcy estate. We conclude that the malpractice claim is property of Alvarez's bankruptcy estate, and accordingly, we affirm the order of the district court.

## I. FACTUAL & PROCEDURAL BACKGROUND

Fernando Alvarez filed a complaint against the law firm of Johnson, Blakely, Pope, Bokor, Ruppel & Burns ("Johnson Blakely") in Florida state court, alleging legal malpractice.  The crux of Alvarez's malpractice claim is his allegation that Johnson Blakely negligently disregarded his instructions to file a reorganizational bankruptcy case (Chapter 11) on his behalf and instead filed a liquidating bankruptcy case (Chapter 7).  Alvarez's complaint alleged that as a result of Johnson Blakely's negligent actions, Alvarez "sustained damages including, but not limited to, the loss of control and ownership of substantial assets, including ownership interests in stocks and a chose in action, loss of opportunity, loss of use of the assets, and other damages recoverable at law."

Johnson Blakely removed the malpractice action to the United States Bankruptcy Court for the Middle District of Florida.[1] Johnson Blakely subsequently filed a motion for judgment on the pleadings contending that the claims asserted in Alvarez's complaint are property of Alvarez's bankruptcy estate, not property of Alvarez the debtor, and that, accordingly, those claims can only be asserted by the bankruptcy trustee or, at least, the trustee is an indispensable party to the litigation. Thus, Johnson Blakely argued that unless the trustee is joined, the complaint should be dismissed.

The bankruptcy court held that the claims in Alvarez's complaint are not property of the estate and that, as a result, the trustee is not an indispensable party to the litigation. The bankruptcy court denied Johnson Blakely's motion for judgment on the pleadings, and Johnson Blakely appealed to the district court. The district court reversed, holding that the malpractice action is property of Alvarez's bankruptcy estate and that the bankruptcy trustee is indispensable to maintenance of the action. The district court remanded the case to the bankruptcy court for further proceedings consistent with its order. From the district court's order, Alvarez now appeals to this Court.[2]

## II. DISCUSSION

The issue we must decide is whether or not Alvarez's legal malpractice cause of action is property of his bankruptcy estate. Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §

---

[1]Alvarez then filed a "Motion for Remand or, in the Alternative, Motion for Mandatory Abstention or, in the Alternative, Motion for Permissive Abstention, and Objection to Designation as Core Proceeding." The bankruptcy court denied that motion. Alvarez appealed that denial to the United States District Court for the Middle District of Florida. The district court dismissed the appeal, and Alvarez appealed to this Court. We dismissed the appeal for lack of jurisdiction.

[2]The order appealed from is a final and appealable order. *See T&B Scottdale Contractors, Inc. v. United States,* 866 F.2d 1372, 1375 (11th Cir.1989) (holding that a district court's decision to include funds in a bankrupt's estate is final and appealable and clarifying that, while an order is not final if on remand the bankruptcy court must exercise "significant judicial activity involving considerable discretion," such activity must be related to the order entered by the district court). We thus have jurisdiction to hear this appeal.

541(a)(1).[3]  The question, then, is whether this malpractice claim constituted a "legal or equitable [interest] of [Alvarez] in property" "as of" the commencement[4] of his bankruptcy case, such that the malpractice claim became property of his estate.  We note that the parties disagree about whether this question is governed by state law[5] or federal bankruptcy law.[6]  We decline to decide the question of which law governs this determination, because in either event, we conclude that this legal malpractice claim is property of Alvarez's bankruptcy estate.

A.      *Florida Law*

Under Florida law, a cause of action for legal malpractice has three elements:  (1) the attorney's employment;  (2) the attorney's neglect of a reasonable duty;  and (3) the attorney's negligence was the proximate cause of loss to the client.  *See Steele v. Kehoe,* 747 So.2d 931, 933 (Fla.1999).  The third element of a legal malpractice claim, that the attorney's negligence be the proximate cause of loss to the client, is also referred to as the concept of "redressable harm."  *Lenahan v. Russell L. Forkey, P.A.,* 702 So.2d 610, 611 (Fla.

---

[3]Section 541(b) lists exclusions from this broad definition of "property of the estate," none of which are asserted to be applicable here.

[4]The filing of a petition for bankruptcy marks the commencement of the bankruptcy case.  *See* 11 U.S.C. § 301.

[5]*See, e.g., Southtrust Bank of Alabama v. Thomas* (*In re Thomas*), 883 F.2d 991, 995 (11th Cir.1989) (stating that whether an interest of the debtor is property of the estate is a federal question, but the nature and existence of the debtor's right to property is determined by looking at state law);  *Charles R. Hall Motors, Inc. v. Lewis* (*In re Lewis*), 137 F.3d 1280, 1283 (11th Cir.1998) (same);  *State Farm Life Ins. Co. v. Swift* (*In re Swift*), 129 F.3d 792, 795 (5th Cir.1997) (looking to state law to determine if debtor had a property interest in a cause of action at the time he filed bankruptcy).

[6]*See, e.g., Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966) (concluding that a debtor's claim for loss-carryback tax refunds was property of the bankruptcy estate, and, in reaching that conclusion, stating:  "Whether an item is classed as 'property' by the Fifth Amendment's Just-Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, whose own purposes must ultimately govern");  *In re Tomaiolo,* 205 B.R. 10, 14 (Bankr.D.Mass.1997) (relying on *Segal* to conclude that bankruptcy policy considerations, not state law, drive the determination of whether or not a debtor's chose in action is to be included in the bankruptcy estate);  *In re Richards,* 249 B.R. 859 (Bankr.E.D.Mich.2000) (relying on *Segal* to conclude that the appropriate inquiry for determining whether the debtor's cause of action is property of the estate is whether the claim is sufficiently rooted in the pre-bankruptcy past, not the date that the claim accrues under state law).

4th DCA 1997). Pursuant to Fla. Stat. Ann. § 95.031(1), a cause of action accrues "when the last element constituting the cause of action occurs."[7] Alvarez argues that the third element of his malpractice cause of action, that of redressable harm, did not occur until after the filing of his bankruptcy petition.[8] We disagree.

At the moment Alvarez's bankruptcy petition was filed, his Chapter 7 bankruptcy estate was created, *see* § 541(a) ("The commencement of a case under section 301 ... of this title creates an estate."), his interests in property vested in the estate, and all of the legal ramifications attendant to creation of such an estate came into existence.[9] The transfer of Alvarez's interests in property to a Chapter 7 bankruptcy estate rather than

---

[7]We recognize that, under Florida law, the statute of limitations does not begin to run with respect to an action for professional malpractice until "the cause of action is discovered or should have been discovered with the exercise of due diligence." Fla. Stat. Ann. § 95.11(4). This fact is irrelevant for our inquiry, however. As the Fifth Circuit stated in *State Farm Life Ins. Co. v. Swift* (*In re Swift* ), 129 F.3d 792, 798 (5th Cir.1997):

> We are determining when the [cause] of action accrued for purposes of ownership in a bankruptcy proceeding. The time of discovery of the injury is not relevant to this inquiry. A cause of action can accrue for ownership purposes before the statute of limitations for that cause of action has begun to run.

> Along these lines, we note that a study of relevant Florida caselaw may create some confusion about use and meaning of the word "accrual." As explained above, under Fla. Stat. Ann. § 95.031(1), "[a] cause of action accrues when the last element constituting the cause of action occurs." Some Florida cases, however, suggest that the concept of accrual in the legal malpractice context includes the discovery aspect of the statute of limitations inquiry. *See, e.g., Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323, 1325 (Fla.1990) ("Generally, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act."); *cf. Swift,* 129 F.3d at 796-98 (noting that recent Texas cases "have muddied the waters" and blended the issue of accrual and the start of the statute of limitations "because of the luxury of the discovery rule in a statute of limitations case" and because "the issue of accrual of a cause of action rarely occurs apart from the issue of when the statute of limitations begins to run"). As noted, however, a cause of action can accrue for ownership purposes in a bankruptcy proceeding before the statute of limitations begins to run. Thus, our inquiry is concerned with when Alvarez's legal malpractice "accrued" in the sense of Fla. Stat. Ann. § 95.031(1), *i.e.* when the last element constituting his cause of action occurred.

[8]It is clear that the first two elements of the cause of action occurred as of the filing. Johnson Blakely was employed by Alvarez prior to filing, and the alleged negligent acts involving the preparation and decision to file a Chapter 7 petition rather than a Chapter 11 petition occurred prior to filing as well. The alleged negligent act of filing the Chapter 7 petition occurred as of the time of the filing.

[9]The legal consequences of filing a Chapter 7 petition, and thus creating a Chapter 7 estate, are quite different than those attendant to a Chapter 11 petition. For instance, in a Chapter 7 case, a trustee is

a Chapter 11 bankruptcy estate as Alvarez intended is sufficient injury to indicate that Alvarez had a cognizable interest in this legal malpractice claim at the precise moment his Chapter 7 petition was filed. Alvarez suggests, without pointing to any relevant authority, that the harm to him did not occur until some later time, for example when the trustee in bankruptcy failed to realize from one of the assets as much as Alvarez alleges should have been realized. We disagree. Alvarez's loss of ownership and control of his assets upon the bankruptcy filing constitutes a significant and tangible change which obviously caused harm to him. No one would suggest that the victim of a conversion is not harmed when deprived of ownership and control of an asset.[10] While we have found no Florida cases directly on point,[11] we readily conclude that redressable harm occurred at the moment of bankruptcy filing.

To the extent that Alvarez suggests that redressable harm occurring at the instant of filing is

appointed who is charged with the duty of liquidating the assets in the debtor's bankruptcy estate with the goal of satisfying as many of the creditors' claims as possible. *See, e.g., Cable v. Ivy Tech State College,* 200 F.3d 467, 472 (7th Cir.1999) ("Chapter 7 establishes a ... radical solution to indebtedness, requiring the liquidation of the debtor's property, to which end Congress granted the trustee broad powers without interference from the debtor. The trustee has sole authority to dispose of property ...."). In a Chapter 11 case, the debtor-in-possession generally manages and administers his own bankruptcy estate, with the goal of reorganizing his affairs rather than liquidating them. *See, e.g., Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd.* (*In re Gibson Group, Inc.*), 66 F.3d 1436, 1442 (6th Cir.1995) ("The purpose of [Chapter 11] is to provide a debtor with legal protection in order to give [him] the opportunity to reorganize, and thereby to provide creditors with going-concern value rather than the possibility of a more meager satisfaction through liquidation."). Indeed, Alvarez alleges that his damages were caused because a Chapter 7, rather than a Chapter 11, petition was filed.

[10]We note that Alvarez's further allegation of Johnson Blakely's post-filing failure to convert the case from Chapter 7 to Chapter 11 is more aptly described as simply a failure to seek to remedy the initial negligent act or ameliorate the harm, rather than as an independent act of negligence.

[11]Nor has either party cited helpful authority. Unlike the instant case, none of the cases relied upon by Alvarez or the Bankruptcy Court involved allegations of pre-petition malpractice resulting in damage to the plaintiff from the loss of control of assets, which of course occurred here as of the filing of the petition. Although the facts in *Collins v. Federal Land Bank of Omaha,* 421 N.W.2d 136 (Iowa 1988) would appear to be similar to the instant facts, a majority of the Supreme Court of Iowa concluded, without any explanation, that it failed "to discern how any adverse economic consequences produced by the chapter 7 election [rather than a Chapter 11] could have impacted on the Collinses until after the chapter 7 petition was filed." *Id.* at 139. The Iowa court apparently overlooked the loss of control of a debtor's assets which occurs as of a Chapter 7 filing. To the extent that the Iowa court suggested that such loss of control does not constitute redressable harm, we respectfully disagree. Under Florida law, a cause of action accrues at the time injury from a negligent act is first inflicted, and not at the time that the full extent of the damages is ascertained. *See Carter v. Cross,* 373 So.2d 81, 82-3 (Fla. 3d DCA 1979).

insufficient to make this cause of action part of his bankruptcy estate because the estate includes only interests the debtor holds immediately *prior* to filing,[12] and not those interests arising simultaneously with filing, we again disagree. The plain language of § 541(a)(1) includes in the estate interests of the debtor "as of" filing, not interests of the debtor "before" or "prior to" filing. *See Jones v. Hyatt Legal Services* (*In re Dow*), 132 B.R. 853, 860 (Bankr.S.D.Ohio 1991) (noting that the language "as of" is significant and holding that where damages caused by alleged malpractice occurred at the point of filing of the petition, the cause of action was property of the estate). Moreover, Congress intended the scope of § 541(a)(1) to be broad. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983); S.Rep. No. 95-989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 95-595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323. We thus conclude that, looking to state law, this interest in property arising simultaneously with the filing of Alvarez's bankruptcy petition was an interest of Alvarez in property "as of" the commencement of the case, and thus, property of the estate under § 541.

B.     *Federal Bankruptcy Law*

We reach the same conclusion by applying federal bankruptcy law. In *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Supreme Court considered the question, under the former Bankruptcy Act,[13] of whether or not the debtors' claims for loss-carryback tax refunds were property of the debtors' bankruptcy estates or property of the individual debtors. Under the tax laws, the loss-carryback refund claims could be asserted only when the tax year had closed, which was post-petition; thus, the tax

---

[12]It is well-settled that causes of action which have accrued prior to bankruptcy become part of the bankruptcy estate. *See Venn v. St. Paul Fire and Marine Ins. Co.,* 99 F.3d 1058, 1064 n. 10 (11th Cir.1996); *see also Miller v. Shallowford Community Hosp., Inc.,* 767 F.2d 1556, 1559 (11th Cir.1985) ("The legislative history [of 11 U.S.C. § 541(a)(1) ] indicates that [the] definition [of property of the estate] includes causes of action existing at the time of the commencement of the bankruptcy action.").

[13]The Bankruptcy Act of 1898 was repealed in 1978 and replaced by the current Bankruptcy Code. *See Georgian Villa, Inc. v. United States* (*In re Georgian Villa, Inc.*), 55 F.3d 1561, 1562 n. 2 (11th Cir.1995). While *Segal* was decided under the 1898 Act, nothing in the changed language suggests a change in the relevant *Segal* holding. Moreover, the legislative history expressly indicates that the current Code follows *Segal* 's result. *See* S.Rep. No. 95-989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 95-595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; *In re Yonikus,* 996 F.2d 866, 869 n. 3 (7th Cir.1993).

refunds in *Segal* were sought and received after the filing of the bankruptcy. In reaching the conclusion that

these potential claims for refunds were property of the bankrupts at the time their bankruptcy petitions were

filed, the Court did not look to state law. Instead, the Court noted:

> Whether an item is classed as "property" by the Fifth Amendment's Just-Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, whose own purposes must ultimately govern.
>
> The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess ... when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.

382 U.S. at 379, 86 S.Ct. at 515. The Court determined that two key elements pointing toward realization

of a tax refund existed at the time the bankruptcy petitions were filed: 1) taxes had been paid on net income

in prior years, and 2) the year of bankruptcy, at that point, exhibited a net operating loss. *See id.* at 380, 86

S.Ct. at 515. The Court concluded that the loss-carryback refund claims were "sufficiently rooted in the

pre-bankruptcy past ... that [they] should be regarded as 'property' " under the Bankruptcy Act. *Id.*[14]

Applying the rationale of *Segal* to the instant case, we conclude that Alvarez's legal malpractice cause

of action is also sufficiently rooted in his pre-bankruptcy past that it should be considered property of Alvarez

as of the commencement of his bankruptcy case, and thus property of his estate. Alvarez established an

---

[14]In reaching its conclusion that these refund claims were property under the Act at the time of filing, the Court also determined that the claims were "little entangled with the bankrupts' ability to make an unencumbered fresh start." 382 U.S. at 379, 86 S.Ct. at 515. The Code, however, eliminates this inquiry from the determination of whether an interest of the debtor is property of the estate. *See* S.Rep. No. 95-989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868; H.R.Rep. No. 95-595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6324 ("Paragraph (1) [of subsection (a) of § 541] has the effect of overruling *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. 522 ....") (footnote omitted); *see also Rau v. Ryerson (In re Ryerson* ), 739 F.2d 1423, 1426 (9th Cir.1984).

> After concluding that the refund claims were property of the bankrupts as of filing, the *Segal* Court then proceeded to make the additional determination, required under the former Act but not the current Code, that the loss-carryback refund claims were property "which prior to the filing of the petition [the bankrupt] could by any means have transferred ...," in order to reach its ultimate determination that the refunds claims were property of the bankrupts' estates. 382 U.S. at 381-85, 86 S.Ct. at 516-18.

attorney-client relationship with Johnson Blakely prior to his filing for bankruptcy, and this cause of action arises directly out of Alvarez's interactions with the firm prior to filing—*i.e.* Alvarez's instructions to Johnson Blakely to file Chapter 11 and the firm's alleged disregard of those instructions—*i.e.* the preparation and filing instead of a Chapter 7 petition. Simultaneous with the filing, Alvarez suffered significant harm from the firm's alleged negligence, *i.e.* the loss of control of assets. The claim in the instant case is even more firmly "rooted in the pre-bankruptcy past" than the claim in *Segal. See also Tomaiolo,* 205 B.R. at 15 (concluding that debtor's legal malpractice claims, including claim concerning services in the preparation of documents filed with the bankruptcy petition, were sufficiently rooted in the pre-bankruptcy past to be includible in bankruptcy estate).

### III. CONCLUSION

The bankruptcy trustee is the legal representative of the bankruptcy estate, with capacity to sue and be sued. *See* 11 U.S.C. § 323. Thus, as we have concluded that the legal malpractice cause of action at issue is property of Alvarez's bankruptcy estate, and as there is no indication in the record before us that the trustee has abandoned this claim, Alvarez may not maintain this suit without participation by the trustee. *See Vreugdenhil v. Hoekstra,* 773 F.2d 213, 215-16 (8th Cir.1985) (noting that authorities agree, although on varying rationales, that a debtor may not prosecute on his own a cause of action belonging to the estate unless that cause of action has been abandoned by the trustee).[15]

Alvarez also argues that the bankruptcy court erred in denying his motion to remand or abstain.

---

[15]Alvarez also argues that there is no federal jurisdiction over this malpractice cause of action. 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This provision creates jurisdiction in three categories of proceedings: those that "arise under title 11," those that "arise in cases under title 11," and those "related to cases under title 11." *Continental Nat'l Bank of Miami v. Sanchez* (*In re Toledo* ), 170 F.3d 1340, 1344 (11th Cir.1999). The bankruptcy court's jurisdiction is derivative of and dependent upon these three bases. *See id.* As the malpractice claim belongs to Alvarez's bankruptcy estate, the bankruptcy court clearly has "related to" jurisdiction over it, as the value of the claim, if it has any, will inure to the benefit of the estate. *Cf. Toledo,* 170 F.3d at 1345-47 (holding that there was "related to" jurisdiction over adversary proceeding where the value and extent of the estate's indirect interest in partnership property would necessarily be affected by the outcome of the adversary proceeding and where the outcome could have the conceivable effect of partially satisfying one secured creditor's claim, thus freeing up additional money for distribution to unsecured creditors).

Assuming *arguendo,* but not deciding, that we might appropriately exercise appellate jurisdiction over that issue, we decline to exercise it. We have held that the malpractice cause of action is property of the estate. The trustee in bankruptcy, not Alvarez, is the appropriate person to urge remand or abstention, matters which can be addressed by the bankruptcy court on remand.

The judgment of the district court is

AFFIRMED.

HILL, Circuit Judge, concurring dubitante:

I concur with the majority. I confess some doubt, however, as to the enthusiasm with which they reach their result. The term "property of the estate" is comprised of "all legal or equitable interests of the debtor in property *as of* the commencement of the case." 11 U.S.C. § 541 (emphasis added). Therefore it seems to me that whether a claim is "property of the estate" depends upon whether the claim accrued *before or after* the filing of the petition. In Florida, the accrual of a negligence action is measured *from the time the injuries are sustained* and not from the time the full extent of the damages have been ascertained. *Trizec Properties, Inc. v. Biltmore Constr. Co., Inc.,* 767 F.2d 810, 812 n. 4 (11th Cir.1985) (emphasis added).

Here I believe the claim accrued at the moment the petition was filed. What we then have is a single act which produces two conflicting results. When the petition is filed, the estate is instantly created but the alleged tort is also completed. If the filing injures the plaintiff, how can the claim be a part of the estate *as of* the commencement of the case? Or, if the filing injures the plaintiff, how can the claim not be a part of the estate, and the plaintiff be said to have been injured *after* the commencement of the case, when the last act producing the injury coincides with the estate creation?[1]

With these doubts expressed, and a belief, as the majority opines, that the term "property of the estate" should be generously construed, I concur, because I believe the general purposes of the bankruptcy code are better served by the panel majority's unraveling of this conundrum.

---

[1] Decision-makers have been accused of flipping coins—"Heads, it is property of the estate, tails, it is not." That doesn't decide the issue when the coin stands on its edge.