[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-16188

_____

D. C. Docket No. 03-80717-CV-DTKH
BKCY No. 02-03168-BKC-SH

FILED

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 25, 2004
THOMAS K. KAHN
CLERK**

In re:

ALFRED J. WITKO,

Debtor.

_____

ALFRED J. WITKO,

Defendant-Appellant,

versus

DEBORAH C. MENOTTE, Trustee,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 25, 2004)**

Before BLACK and MARCUS, Circuit Judges, and SMITH[*], District Judge.

SMITH, District Judge:

Alfred J. Witko (Witko) appeals the district court's award of his legal malpractice claim to his bankruptcy estate. On appeal, Witko argues that he filed his bankruptcy petition before his legal malpractice cause of action accrued and that the legal malpractice, upon which he bases his claim, did not damage the bankruptcy estate. We conclude that Witko's cause of action is not property of his estate and, accordingly, we reverse.

## I. BACKGROUND

On September 8, 1999, Witko filed a petition for voluntary bankruptcy. On January 13, 2000, in a separate proceeding regarding Witko's marital dissolution, a state trial court denied his request for alimony, which a state appellate court affirmed on December 15, 2000. Witko, thereafter, sued his divorce counsel for malpractice. The trustee of Witko's bankruptcy estate, Deborah C. Menotte, intervened, seeking a determination that Witko's malpractice claim was estate property. The bankruptcy court held that Witko's cause of action was property of the estate because "the better rule is that where pre-petition acts form part of a chain of events that lead to a

---

[*] Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation.

2

post-petition 'redressable harm,' the cause of action is 'sufficiently rooted in the debtor's pre-petition past. . . .'" The district court affirmed and Witko now appeals to this Court.

## II. JURISDICTION

Witko's appeal is timely and this Court has jurisdiction. 28 U.S.C. § 158(d).

## III. STANDARD OF REVIEW

This Court reviews *de novo* the question of law whether a debtor's interest is property of the bankruptcy estate. *Bell-Tel Fed. Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350, 1352 (11th Cir. 2002).

## IV. ANALYSIS

Pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not. Specifically, the debtor's filing of a petition with the bankruptcy court commences a voluntary bankruptcy case. 11 U.S.C. § 301. The commencement of a voluntary bankruptcy case creates an estate generally consisting of the "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Although the estate is construed broadly, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313, 76 L. Ed. 2d 515 (1983), Congress expressly cautioned that the Bankruptcy Code "is not intended to expand the debtor's rights against others more than they exist at the

commencement of the case. . . . [The trustee] could take no greater rights than the debtor himself had." S. Rep. No. 95-989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868; H.R. Rep. No. 95-595, at 367-68 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323.

In *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511, 15 L. Ed. 2d 428 (1966), for example, the Supreme Court concluded that the debtor's loss-carryback tax refund claims were property of the estate because they were "sufficiently rooted in the pre-bankruptcy past." *Id*. at 380, 86 S. Ct. at 515. Although the *Segal* debtor could not claim the refunds until the tax year closed, which was post-petition, the predicates for receiving the refunds (payment of taxes in prior years and a net operating loss) occurred pre-petition. *Id*. The debtor had more than a mere hope that his losses might generate revenue in the future; he "possessed an existing interest at the time of filing," even though his enjoyment of that interest was postponed. *Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026 (8th Cir. 2002); *see Sliney v. Battley (In re Schmitz)*, 270 F.3d 1254, 1258 (9th Cir. 2001). The Supreme Court did not allow the *Segal* trustee to assert more rights than the debtor had at the commencement of the case; it merely allowed the trustee to seek the interests existing, though still undetermined in quantity, at the time the debtor filed his petition.

The issue here is whether Witko's legal malpractice claim is property of his bankruptcy estate. This Court must determine whether the courts below correctly classified Witko's cause of action as a pre-petition interest. As reflected by the parties' briefing and oral arguments, recent cases arguably have clouded previous choice of law authority. *See Johnson v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1276 (11th Cir. 2000) ("We note that the parties disagree about whether this question is governed by state law or federal bankruptcy law. We decline to decide the question of which law governs this determination, because in either event, we conclude that this legal malpractice claim is property of Alvarez's bankruptcy estate.") (footnotes omitted). We now reiterate that federal law determines whether an interest is property of the bankruptcy estate, *Segal*, 382 U.S. at 379, 86 S. Ct. at 515, and "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979); *see also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S. Ct. 1386, 1389, 118 L. Ed. 2d 39 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283 (11th Cir. 1998) (quoting *Southtrust Bank of Ala. v.*

*Thomas (In re Thomas)*, 883 F.2d 991, 995 (11th Cir. 1989)) ("[T]he nature and existence of the debtor's right to property is determined by looking at state law.") (brackets omitted). State law thus controls Witko's legal malpractice cause of action and determines whether that claim existed at the time Witko filed his bankruptcy petition.

Applying the appropriate state law, Witko's legal malpractice cause of action did not exist until his alimony action concluded with an adverse outcome that was proximately caused by his attorney's negligence. "Under Florida law, a cause of action for legal malpractice has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss to the client." *In re Alvarez*, 224 F.3d at 1276 (citing *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999)). Discussing the third element, the Florida Supreme Court unambiguously held that until the underlying action is concluded with an outcome adverse to the client (*i.e.*, harm), "a malpractice claim is hypothetical and damages are speculative." *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 (Fla. 1998); *see Blumberg v. USAA Cas. Ins. Co.*, 790 So. 2d 1061, 1065 (Fla. 2001) ("[I]n the circumstances presented here, a negligence/malpractice cause of action accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings. . . ."); *see also* Fla. Stat. § 95.031(1) ("A cause of action accrues when

6

the last element constituting the cause of action occurs."). The machinations of legal malpractice, especially the element requiring the conclusion of judicial proceedings, distinguish legal malpractice actions from virtually all other tort claims. Although proximate harm usually occurs in close temporal proximity to tortious conduct, legal malpractice harm often arises well after the attorney's failures. Otherwise stated, it is unlikely that a car accident victim could file her bankruptcy petition between the causal act and her resulting harm.

Witko did not suffer any harm from the alleged legal malpractice prior to or contemporaneous with filing his bankruptcy petition. Witko filed his bankruptcy petition on September 8, 1999. The judicial proceedings underlying his malpractice claim did not conclude until months later on January 13, 2000 -- at the earliest (the state appellate court did not affirm the trial court's decision until December 15, 2000). These facts distinguish the instant matter from *In re Alvarez*, where a legal malpractice cause of action was found to be sufficiently rooted in the pre-bankruptcy past. *In re Alvarez*, 224 F.3d at 1279. There, the harm occurred at the same time Alvarez's attorneys filed his bankruptcy petition. *Id.* ("Simultaneous with the filing, Alvarez suffered significant harm from the firm's alleged negligence, *i.e.* the loss of control of assets."). When Witko filed his bankruptcy petition he had not yet suffered any harm. Witko's malpractice cause of action was unknown, not even rising to a

hope; the most pessimistic curmudgeon could not anticipate that, months later, Witko would lose his alimony claim due to his attorney's malpractice. Witko's legal malpractice cause of action did not exist at the time he filed his bankruptcy petition and, consequently, is not property of his bankruptcy estate.

## V. CONCLUSION

For the reasons set forth above, we hold that Witko's malpractice cause of action is not property of his bankruptcy estate. Accordingly, we reverse.

**REVERSED.**