

FILED
Dec 31 2015, 9:58 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Matthew A. Griffith
Griffith Law Group, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Bradley J. Buchheit
Tucker Hester Baker & Krebs, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven E. Dotlich,

*Appellant-Defendant*,

v.

Tucker Hester, LLC,

*Appellee-Plaintiff*.

December 31, 2015

Court of Appeals Case No.
29A02-1503-CC-125

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1112-CC-12997

**Brown, Judge.**

[1] Steven E. Dotlich appeals the trial court's entry of summary judgment in favor of William Tucker with respect to Dotlich's malpractice claim against Tucker. Dotlich raises five issues which we consolidate and restate as whether the court erred in entering summary judgment in favor of Tucker. We affirm.

## Facts and Procedural History

[2] Dotlich first met with Tucker, an attorney with Tucker Hester, LLC (the "firm") on January 24 or 25, 2011. At the meeting, Dotlich explained that most of his debts were secured by crane equipment, vehicles, or other assets, and that he was mostly concerned about saving his family home and his 12.5% limited partnership interest his father had given him in Speedway Industrial Park, L.P. Dotlich met again with Tucker on February 3, 2011, at which time Dotlich signed an engagement letter, and Tucker filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on behalf of Dotlich on the same day. Tucker filed "Schedule B – Personal Property" with the bankruptcy court on February 17, 2011, which included an interest of 12.5% in "Speedway Industrial Park, Inc."[1] Appellant's Appendix at 149. Tucker filed a

---

[1] Specifically, the description of the property provided:

> Speedway Industrial Park, Inc. - Debtor owns 12.5% interest in this entity. Remaining ownership interest is as follows: Dan Dotlich 12.5%, Rudy Dotlich 12.5%, Dale Dotlich 12.5%, Monnie Dotlich 24.5%, Margaret Dotlich 24.5%, MD Realty, Inc. 1%. Debtor has no records for the corporation. There has been litigation between debtor and other owners of the corporation. Debtor is unable to obtain any information regarding the corporation. To obtain the information, Trustee should contact . . . , CPA, or Monnie Dotlich. Contact information for [CPA]. Contact information for Monnie Dotlich: . . . . Debtor has never received dividends and is obligated to pay taxes every year.

Appellant's Appendix at 149. The property was also listed on Schedule C for property claimed as exempt, the "Value of Claimed Exemption" for the property was listed as $279.00, and the "Current Value of Property Without Deducting Exemption" was listed as "Unknown." *Id.* at 154.

motion to withdraw his appearance from Dotlich's bankruptcy case on August 24, 2011, and two days later the court granted the motion.

[3] On December 23, 2011, the firm filed a Complaint on Account in the Hamilton Superior Court against Dotlich alleging that he owed the firm $10,658.73. On February 23, 2012, Dotlich by new counsel filed an answer. On April 2, 2012, Dotlich's new counsel also entered an appearance for him in his bankruptcy case. In the Hamilton Superior Court, Dotlich filed a Motion for Leave to Amend Answer to Complaint and a Motion to Join Person as Party on July 27, 2012, and the court granted the motions, including that William Tucker was named as a counter-defendant on August 1, 2012,. Dotlich filed an Amended Answer and Counterclaims on August 28, 2012, alleging:

> 1. There was an attorney-client relationship between William Tucker and his law firm ("the Firm,") as attorneys, and Steven E. Dotlich, as client.
>
> 2. As a result of the attorney-client relationship, Tucker and the Firm, who held themselves out to the public as possessing greater than ordinary knowledge and skill in the field of bankruptcy law, had a duty to represent Mr. Dotlich with the reasonable care, skill, and diligence ordinarily possessed and exercised by attorneys specializing in the field of bankruptcy law, under similar circumstances.
>
> 3. Tucker and the Firm's conduct in filing bankruptcy for Mr. Dotlich, was a breach of their duty to exercise reasonable care, skill, and diligence on Mr. Dotlich's behalf.
>
> 4. As a result of said negligence in filing bankruptcy on behalf of Mr. Dotlich, Mr. Dotlich sustained injury and loss.

*Id.* at 127-128.[2]  The bankruptcy court's docket shows that a discharge of debtor was entered on March 4, 2013, and that the bankruptcy case was closed on April 8, 2014.

[4]     On June 19, 2014, Tucker filed a motion for summary judgment together with a designation of evidence.  He contended that Dotlich was judicially estopped from pursuing his counterclaim, that Dotlich failed to amend his bankruptcy schedules to reflect his malpractice claim and accordingly represented to the bankruptcy court that he had no such claim, and that Dotlich would gain an unfair advantage if not estopped as the bankruptcy trustee relied on his misrepresentations and determined that there were fewer available assets for distribution to his creditors.

[5]     Dotlich filed a response together with designated evidence.  He contended that Tucker's motion was premised on the false conclusion that the malpractice claim is an asset of the bankruptcy estate, and that Tucker made a number of post-petition errors, including improperly listing assets as exempt and failing to accurately describe assets and their true values.  He noted that Chapter 7 differs from bankruptcy under Chapters 11 and 13, and asserted that the filing of a

---

[2] Also, his answer, Dotlich asserted affirmative defenses including that: (1) the firm overbilled him for the services that were actually provided; (2) the legal services provided by the firm were poor in quality and do not deserve the compensation outlined in the account agreement for the quality of work that was expected of the firm; (3) the firm failed to communicate properly with Dotlich concerning the services it was obligated to provide; (4) the firm failed to provide Dotlich with proper instructions regarding the legal services it was obligated to provide; (5) the firm failed to follow Dotlich's instructions and is seeking fees that were not earned; (6) Dotlich repeatedly objected to and complained about the firm's services and bills; and (7) the firm harmed Dotlich's legal rights and committed negligence.

Chapter 7 bankruptcy petition creates a bankruptcy estate encompassing all interests of the debtor in property "as of the commencement of the case" and that his malpractice claim arose after the filing of the petition. *Id.* at 109.

[6] In his reply, Tucker argued that only the bankruptcy trustee could pursue the claims, and all of the elements of a claim for legal malpractice were present at the time the bankruptcy petition was filed. He also argued that, even if the malpractice claim did not accrue under Indiana law "as of" the filing date, the claim has sufficient roots in Dotlich's pre-bankruptcy activities to warrant inclusion in his bankruptcy estate. *Id.* at 913.

[7] On December 15, 2014, the court held a hearing, and on February 9, 2015, entered summary judgment in favor of Tucker and against Dotlich on Dotlich's counterclaim. The court found that Dotlich received a discharge in bankruptcy more than seven months after he moved for leave to file his counterclaim in this case, he did not amend his bankruptcy schedules or notify the trustee of the claim, and that the counterclaim was property of the bankruptcy estate and only the bankruptcy trustee could pursue it. The court noted that Section 541(a)(1) of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case," and that property of the estate is broadly construed. *Id.* at 14 (citing 11 U.S.C. § 541(a)(1)). The court found that causes of action that accrue as a result of the filing of a bankruptcy petition are property of the estate. *Id.* at 15 (citing *In re Strada Design Assocs., Inc.*, 326 B.R. 229, 235 (Bankr. S.D. N.Y. 2005); *In re Alvarez*, 224 F.3d 1273, 1278 (11th Cir. 2000), *cert. denied*, 531 U.S.

1146; *In re Dow*, 132 B.R. 853, 860 (Bankr. S.D. Ohio 1991)). The court further stated that this conclusion follows from a comparison between 11 U.S.C. §§ 541(a)(1) and (a)(7), where Section 541(a)(1) deals with the debtor's interests "as of the commencement of the case" as opposed to interests "before" or "prior to" filing, *id.* (citing *Alvarez*, 224 F.3d at 1278), and Section 541(a)(7) defines property of the estate to include any interest in property that the estate acquires "after the commencement of the case." *Id.*

[8] The court found that, under Indiana law, a legal malpractice claim consists of four elements: an attorney-client relationship, negligence, proximate cause, and damages, and that a claim "based on negligently advising a client to file a bankruptcy petition accrues, at the latest, at the time the petition is filed." *Strada Design Associates*, 326 B.R. at 237; *see also Alvarez*, 224 F.3d at 1279 (same); *In re Bounds*, 495 B.R. 725, 732 (W.D. Tex. 2013) (same); *Dow*, 132 B.R. at 859-60 (same). The court noted that Dotlich's counterclaim alleged that "Tucker breached his duty of care by filing Dotlich's bankruptcy petition" and that "Tucker's breach was the proximate cause of Dotlich's damages." *Id.* at 18-19 (citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008) (the facial allegations of the complaint limit and guide the accrual analysis)).

[9] The court further concluded that, "[a]ssuming for the sake of argument that Dotlich's malpractice claim did not accrue under Indiana law 'as of' the filing date, it still has sufficient roots in Dotlich's pre-bankruptcy activities to warrant inclusion into his estate." *Id.* at 20. The court found in part:

28. Here, Dotlich's malpractice claim has all its roots in his pre-bankruptcy past. He consulted with and retained Tucker prior to the petition date. The allegations of lack of due care, culminating in the filing of Dotlich's chapter 7 petition, relate to Tucker's pre-petition advice. Finally, Dotlich suffered his alleged injury—loss of control of his ownership interest in Speedway Industrial Park, Inc., subjecting it to the liquidation powers of the trustee—at the moment the petition was filed.

*Id.* at 17, 20-21.

[10] The court found that unless and until the bankruptcy trustee abandoned the claim from the estate, Dotlich had no standing to pursue it.

[11] The court also concluded that Dotlich is judicially estopped from pursuing his counterclaim, noting that federal courts have developed a basic default rule that, if a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action and that Indiana abides by this rule. *Id.* at 24 (citing *Hammes v. Brumley*, 659 N.E.2d 1021, 1028 n.4 (Ind. 1997) ("Unless scheduled by the debtor and abandoned by the trustee in bankruptcy, such [assets] may no longer be pursued by the debtor."), *reh'g denied*; *Shewmaker v. Etter*, 644 N.E.2d 922, 930 (Ind. Ct. App. 1994) ("Indiana will not allow a debtor who has shielded assets from his creditors to pursue that asset in its courts."), *adopted by Hammes*).

[12]    The order provided there was no just reason for delay and expressly directed the entry of judgment in favor of Tucker and against Dotlich on his counterclaim pursuant to Trial Rule 54(B).

### *Issue and Standard of Review*

[13]    The issue is whether the trial court erred in entering summary judgment in favor of Tucker on Dotlich's counterclaim. Our standard of review is the same as it is for the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). The moving party bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.*

[14]    In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind. 1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* The fact that the parties make cross-

motions for summary judgment does not alter our standard of review.

*Huntington v. Riggs*, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), *trans. denied*.

### The Parties' Arguments

Dotlich contends that, by ignoring uncontested evidence and mischaracterizing his counterclaim, the trial court was able to apply the law in such a way as to explain why it rendered judgment against him. He concedes that, if his claim was property of the bankruptcy estate, then only the bankruptcy trustee could bring it. He asserts, however, that Tucker, "per bankruptcy rules, had 14 days to gather and analyze documents and data necessary to determine the propriety of continuing the bankruptcy for Dotlich, or whether other non-bankruptcy strategies and remedies would have been advisable," and that "[h]ad Tucker done his job properly, Tucker would have concluded that bankruptcy was a very poor choice for Dotlich, and Tucker would have and should have allowed Dotlich's bankruptcy to be automatically dismissed at the end of that 14-day period." Appellant's Brief at 11. He asserts that Tucker committed malpractice on February 17, 2011 when he filed the schedules which listed the partnership interest as an exempt asset and as having a value of $279, and that Tucker made no attempt to mitigate the losses he caused. Dotlich also argues that he is not judicially estopped from asserting Tucker's post-petition bad acts because post-petition causes of action in a Chapter 7 bankruptcy are the right of the debtor alone to pursue.

The firm argues that "[t]he filing of the petition caused the (alleged) harm that Dotlich complains of—not the filing of the schedules 14 days later" and that "at

the moment his petition was filed, he lost control of his ownership interest in Speedway Industrial Park (an asset), subjecting it to the liquidation powers of the trustee." *Id.* at 17-18.

[17] The firm also asserts without citation to authority that every federal court of appeals that has considered the question "has held that a debtor in bankruptcy who receives a discharge (i.e., a personal financial benefit) by representing that he has no valuable legal causes of action cannot turn around after the bankruptcy ends and try to recover on a supposedly nonexistent claim." *Id.* at 25.

## *Discussion*

[18] The trial court found that Dotlich's malpractice claim constituted an asset or property of his bankruptcy estate on three bases, namely, that the malpractice claim arose at the time the bankruptcy petition was filed, that the claim was sufficiently rooted in Dotlich's pre-bankruptcy past such that it should be considered property of his bankruptcy estate, and that Dotlich is judicially estopped from pursuing the claim.

[19] We first turn to when Dotlich's malpractice claim arose. Tucker filed a voluntary petition for bankruptcy under Chapter 7 on behalf of Dotlich on February 3, 2011. Pursuant to 11 U.S.C. § 541(a), the commencement of a bankruptcy action by filing a bankruptcy petition creates an estate, and with certain exceptions the "property of the estate" includes "all legal or equitable

interests of the debtor in property *as of* the commencement of the case."[3] (Emphasis added). The scope of the property defined by Section 541 to be property of the estate is broad, and in general all interests of a debtor, both legal and equitable, are property of the estate. *In Matter of Jones*, 768 F.2d 923, 926 (7th Cir. 1985). Whether a particular interest held by the debtor is "property of the estate" is a question of federal bankruptcy law, but the nature and extent of that interest is defined by state law. *Butner v. United States*, 440 U.S. 48, 54-55, 99 S. Ct. 914, 917-918 (1979); *In Matter of Jones*, 768 F.2d at 927; *see In re Marrs-Winn Co., Inc.*, 203 B.R. 964, 971-972 (Bankr. C.D. Ill. 1995). "Property of the estate" is broadly construed. *See United States v. Whiting Pools,* 462 U.S. 198, 204-05, 103 S. Ct. 2309, 2313 (1983). "This policy is embodied in the concept that property of the estate may include property that a debtor receives post-petition where its origins are sufficiently rooted in the debtor's pre-bankruptcy past." *In re Stewart*, 452 B.R. 726, 741 n.9 (Bankr. C.D. Ill. 2011) (citing *Segal*, 382 U.S. at 380, 86 S. Ct. 511).

---

[3] Section 541(a) provides in part:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>> . . .
>>
>> * * * * *
>>
>> (7) Any interest in property that the estate acquires after the commencement of the case.

[20] In Indiana, the elements of an action for legal malpractice are: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Reiswerg v. Statom*, 926 N.E.2d 26, 30 (Ind. 2010). Generally, for an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred. *See Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009).

[21] In his counterclaim, Dotlich alleged in part that "Tucker and the Firm's conduct *in filing bankruptcy* for Mr. Dotlich, was a breach of their duty to exercise reasonable care, skill, and diligence on Mr. Dotlich's behalf" and that "[a]s a result of said negligence *in filing bankruptcy* on behalf of Mr. Dotlich, Mr. Dotlich sustained injury and loss." Appellant's Appendix at 128 (emphases added). According to his claim, Tucker committed malpractice when he filed the bankruptcy petition on behalf of Dotlich.

[22] When the Chapter 7 voluntary petition was filed, Dotlich's bankruptcy estate was created and his interests in property vested in the estate, and all of the legal ramifications attendant to the creation of the estate came into existence. *See In re Alvarez*, 224 F.3d at 1277. In his designated affidavit, Dotlich stated that he first met with Tucker on January 24 or 25, 2011, at which time he explained to Tucker that he was mostly concerned about saving his family home and his 12.5% limited partnership interest in Speedway Industrial Park, L.P. Dotlich

stated that, at that meeting, Tucker recommended an emergency bankruptcy and that there was no substantive discussion about whether he should file bankruptcy or pursue other strategies. He stated he met again with Tucker on February 3, 2011, that Tucker rushed him to sign his engagement letter, again there was no substantive discussion about his bankruptcy, and that Tucker filed his bankruptcy petition that day. In his appellant's brief, Dotlich argues that Tucker failed to advise him that his most valuable assets could be better protected outside bankruptcy. He does not dispute that his limited partnership interest became property of the bankruptcy estate as of the filing of the petition.

[23] In opposition to Tucker's summary judgment motion, Dotlich designated the affidavit of Grant Shipley. Shipley stated that a partnership interest cannot typically be sold at the request of a creditor but rather the creditor's remedy is to obtain a charging order requiring that profits and distributions be redirected to the creditor, that it would be prudent to advise a debtor to weigh the benefits of waiting out the collection process rather than filing bankruptcy with the potential that the trustee would sell the limited partnership interest, and that the bankruptcy trustee can step into the shoes of the debtor and sell the partnership interest unless it is exempt. He stated in reviewing the docket sheet in the bankruptcy case, he did not see that the trustee objected to Dotlich's claimed exemption. Dotlich stated in his affidavit that his interest in the limited partnership was sold to one of his family members for around $80,000.

[24] The filing of the petition obligated the trustee to liquidate Dotlich's assets,[4] 11 U.S.C. § 704(1), and the deprivation of this asset caused harm to him at the time of the filing. *See In re Alvarez*, 224 F.3d at 1277 (noting, in response to the debtor's argument that the harm did not occur until after the petition was filed, that the debtor's loss of ownership and control of his assets which occurred when the petition was filed constituted a significant and tangible change which obviously caused harm to him); *see also In re Strada*, 326 B.R. at 237 (holding, where the debtors argued they did not suffer injury until after the petition was filed, that the filing of the petition obligated the trustee to liquidate the debtors' assets, that the filing decreased their values as measured by the difference between their going concern and liquidation values, and that just being in Chapter 7 was sufficient harm itself to impose a duty on the firm to rectify it); *In re Dow*, 132 B.R. at 860 (holding that the damages caused by the alleged malpractice occurred at the point of the filing of the Chapter 7 bankruptcy petition). Also, Dotlich's assertion that Tucker failed to permit the bankruptcy proceeding to be dismissed relates to a failure to seek to remedy the initial negligent act or ameliorate the harm rather than the act that completed the malpractice. *See In re Alvarez*, 224 F.3d at 1278 n.10 (noting that the debtor's allegation of a post-filing failure was more aptly described as simply a failure to seek to remedy the initial negligent act or ameliorate the harm rather than as an independent act of negligence). We conclude that Dotlich's malpractice claim

---

[4] The decrease in value of Dotlich's property to its liquidation value constitutes harm. *See In re Strada*, 326 B.R. at 237.

arose with the filing of the bankruptcy petition and thus constituted property of the bankruptcy estate under 11 U.S.C. § 541.

[25] In addition, according to *Segal v. Rochelle*, 382 U.S. 375, 86 S. Ct. 511 (1966), a claim can be sufficiently rooted in a debtor's pre-bankruptcy past such that the claim should be considered property of the debtor's bankruptcy estate. The Court in *Segal* considered whether the debtors' claims for loss-carryback tax refunds were property of the debtors' bankruptcy estates. The Court determined that two key elements pointing toward realization of a refund existed at the time the bankruptcy petitions were filed, that taxes had been paid on net income within the past three years and that the year of bankruptcy at that point exhibited a net operating loss. *Id.* at 380, S. Ct. at 515. The Court concluded that the loss-carryback refund claim was "sufficiently rooted in the pre-bankruptcy past . . . that it should be regarded as 'property' . . . ." *Id.*

[26] The trial court did not err in determining that Dotlich's malpractice claim was firmly rooted in the pre-bankruptcy past such that the claim constituted property of his bankruptcy estate. *See In re Alvarez*, 224 F.3d at 1278-1279 (concluding that the debtor's legal malpractice cause of action was sufficiently rooted in his pre-bankruptcy past that it should be considered property of the debtor as of the commencement of his bankruptcy case and thus property of his estate and noting that the malpractice claim was even more firmly rooted in the pre-bankruptcy past than the claim in *Segal*) (citing *In re Tomaiolo*, 205 B.R. 10, 15 (Bankr. D. Mass. 1997) (holding that the debtor's malpractice claims were

sufficiently rooted in the pre-bankruptcy past to be includible in his bankruptcy estate, noting that his claims concerning advice given him to file bankruptcy was based upon pre-petition conduct of the defendants, and observing that, although the debtor alleged post-petition negligence in the defendants' failure to cure errors in documents, that conduct had pre-petition roots), *aff'd*; *see also In re Strada*, 326 B.R. at 238 (holding the malpractice claims had all of their roots in the debtors' pre-bankruptcy past and noting that the firm was consulted with and retained prior to the petition date, that the allegations of lack of care culminated in the filing of the Chapter 7 petitions, and that the debtors suffered their injury and decline in value at the moment the petitions were filed).

[27] Further, Dotlich is judicially estopped from pursuing his malpractice claim. "[A] debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (citing *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (holding that the district court should have recognized the defense of judicial estoppel and dismissed Payless's complaint, and stating that "[t]he basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all [of] one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh," and that Payless had "a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively," and that "Payless, having obtained

judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis"), *cert. denied*, 510 U.S. 931), *cert. denied*, 549 U.S. 1099. *See Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274-1275 (11th Cir. 2010) (noting that the duty to disclose all assets and potential assets applies to proceedings under Chapter 13 and Chapter 7 alike and is a continuing one that does not end once the forms are submitted to the bankruptcy court), *reh'g and reh'g en banc denied*; *Cannon-Stokes*, 453 F.3d at 447-448 (noting that Cannon-Stokes filed a Chapter 7 bankruptcy petition and was discharged and finding that judicial estoppel blocked her attempt to realize a claim for her personal benefit).

[28]     Based upon the designated evidence, Dotlich's malpractice claim constituted property of the bankruptcy estate under 11 U.S.C. § 541. Accordingly, the trial court did not err in determining that Dotlich is precluded from pursuing the claim and in entering summary judgment in favor of Tucker on Dotlich's counterclaim for malpractice.

[29]     To the extent Dotlich argues the court erred in denying his verbal cross-motion for summary judgment on the firm's collection claim, we note that under Appellate Rule 2(H)(2) an order is a final appealable judgment if "the trial court in writing expressly determines under Trial Rule 54(B) . . . there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties . . . ." A "Trial Rule 54(B) certification of an order that disposes of less than the entire case must contain the magic language of the rule." *Ramsey v. Moore*, 959 N.E.2d 246, 253

(Ind. 2012) (citing *Georgos v. Jackson*, 790 N.E.2d 448, 452 (Ind. 2003), *reh'g denied*). The trial court's order in this case contains the "magic language" of Trial Rule 54(B) with respect to its entry of summary judgment "in favor of Tucker and against Dotlich on his counterclaim against Tucker," but does not include the language of Trial Rule 54(B) with respect to the denial of Dotlich's verbal cross-motion for summary judgment on the firm's collection claim. Appellant's Appendix at 35. Accordingly, the portion of the court's order denying Dotlich's verbal cross-motion for summary judgment does not fall under Appellate Rule 2(H)(2). *See Ramsey*, 959 N.E.2d at 253 (observing that the "magic language" in the trial court's order applied to only the portion of the order regarding the grant of summary judgment for Dr. Ramsey, that it was apparent that the trial court intended the Rule 54(B) language to apply solely to that claim, and that there was a clear absence of the Rule 54(B) language in the portion of the court's order denying other motions, and concluding that, accordingly, the relevant part of the trial court's order did not fall under Appellate Rule 2(H)(2)).

### *Conclusion*

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of Tucker on Dotlich's counterclaim for malpractice.

Affirmed.


Riley, J., and Altice, J., concur.